O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>                         Plaintiff,<br><br>          v.<br><br>REAL PROPERTY LOCATED AT 475<br>MARTIN LANE, BEVERLY HILLS,<br>CALIFORNIA, et al.,<br><br>                         Defendants. | CV 04-2788 ABC (PLAx)<br><br>(Consolidated with CV 04-3386<br>ABC (PLAx) and CV 05-3910 ABC<br>(PLAx))<br><br>ORDER RECONSIDERING DENIAL OF<br>MOTION TO INTERVENE AND<br>PROVIDING CERTAIN RELIEF TO THE<br>KIM CLAIMANTS' ATTORNEY |

     The dispute pending before the Court involves federal tax liens
issued against property that the Kim Claimants' attorney argues belong
to him.  Through the twists and turns of this dispute, the Court
previously followed the Government down the rabbit hole into the
Wonderland of an Internal Revenue Code wrongful levy action.[1]  During
that journey it became clear to the Court that it had gone astray.
Indeed, the Government eventually argued in the wrongful levy action
that the dispute at issue should be adjudicated in this forfeiture
action.

---

     [1] Cf. Sessler v. United States, 7 F.3d 1449, 1451 (9th Cir.
1993) ("[I]n the Lewis Carroll world of the Internal Revenue Code,
wrongful levy doesn't mean a levy-done-wrong; no indeed.")

For the reasons discussed below, the Court finds that: (1) it is appropriate to reconsider its minute order denying the Kim Claimants' attorney's motion to intervene (FA Docket No. 654);[2] (2) the Fee Awards ordered by this Court are payable directly to the Kim Claimants' attorney; and (3) the dispute between the Kim Claimants' attorney and the Government over priority in the Seized Properties is not ripe for adjudication.

I.    **PROCEDURAL BACKGROUND**

This forfeiture case arises out of a fraud and embezzlement scheme allegedly directed by Christopher "KJ" Kim ("Kim") and perpetrated against two South Korean corporations – DAS Corporation ("DAS") and Optional Capital, Inc. ("Optional").  On April 21 and May 13, 2004, the Government filed two civil *in rem* forfeiture complaints against certain of the Kim Claimants'[3] assets – the *Martin Lane* properties (CV 04-2788) and the *Beverly Drive* properties (CV 04-3386). On May 27, 2005, the Government filed a third *in rem* forfeiture complaint – *All Funds* (CV 05-3910) – against additional Kim Claimant assets.[4]  In its complaints, the Government claims the Seized Properties were subject to forfeiture because the Kim Claimants acquired them with the proceeds of Kim's alleged fraud and

---

[2]   References to the Docket in the Forfeiture Action, Case No. CV 04-2788, will be denoted as "FA Docket."  References to the Docket in the Wrongful Levy Action, Case No. CV 09-7568, will be denoted as "WLA Docket."

[3]   "Kim Claimants" refers to Kim, certain of his family members, and business entities controlled by Kim from whom these assets were seized.

[4]   These assets are referred to collectively as the "Seized Properties."  Case Numbers 04-2788, 04-3386, and 05-3910 are referred to collectively as the "Forfeiture Action."

embezzlement scheme.  The Kim Claimants were represented in this action by Eric Honig and the Law Offices of Eric Honig, APLC ("Honig").

The Government's substantive claims have all now been finally adjudicated against it.[5]  During the course of the litigation, this Court has issued several orders requiring the Government to pay the Kim Claimants' attorney's fees.  (See FA Docket No. 440 (awarding $1,172,137.90 in fees); FA Docket No. 657 (granting $282,650 in fees).)[6]  The Fee Awards were deposited with the Court Clerk pursuant to Federal Rule of Civil Procedure 67.

The pending dispute relates to the Government's contention that it may use the Kim Claimants' interests in the Seized Properties and Fee Awards to pay off their roughly $25,000,000 in purported tax liabilities.  On the other hand, Honig contends that $2,710,000 in fees owed him from the Kim Claimants has priority over the Government's claims, and should come out of the Seized Properties and Fee Awards free of any encumbrance by the Government.

The dispute was first brought to the Court's attention when Honig filed a motion in the Forfeiture Action seeking an order recognizing the priority of his liens over the Government's liens.  (See FA Docket No. 584 at 4-5.)  Among other arguments raised, the Government asserted that "an in rem forfeiture proceeding is an improper action in which to bring the subject priority claim."  (E.g., FA Docket No. 592 at 7 (citing, inter alia, the wrongful levy statute, 26 U.S.C. § 7426(a)(1)).)  The Court ultimately denied Honig's request based in

---

[5]  While judgment was entered in October 2009, DAS and Optional have appealed.  (FA Docket Nos. 607, 644.)

[6]  These are collectively referred to as the "Fee Awards."

3

1 part on that concern.  (FA Docket No. 603 at 3.)

2      Honig then filed a motion to intervene in the Forfeiture Action.

3 The Government opposed that motion, arguing that denying intervention

4 would not impair Honig's interest in light of the fact that he had

5 also filed a Wrongful Levy Action (Case No. 09-7568):

6           (b.)  <u>Intervenor Will not be Impaired by the Disposition of
            this Action Absent Intervention</u>

7

8           In his Wrongful Levy Action, Intervenor demands that the IRS
            levies on the Defendant Assets on all prior and prospective
            attorneys fees awards be removed to allow him to be paid the

9           assets and the awarded funds.  As Intervenor recognizes,
            this is exactly what he desires to achieve by intervening in

10          this case.

11          Because Intervenor already has a way to obtain all of the
            relief he seeks, no impairment would result to his interests

12          if the Court were to deny intervention.  The mere
            inconvenience of litigating a separate lawsuit is not a

13          sufficient impairment.  If the applicant for intervention
            would receive the same remedy from another pending action

14          that he sought by intervening, he has failed to demonstrate
            that the disposition of the pending action may, as a

15          practical matter, impair or impede his ability to protect
            his interest.

16

17 (FA Docket No. 648 at 12) (internal citations omitted).)  The Court

18 ultimately adopted that reasoning in denying the motion to intervene.

19 (<u>See</u> FA Docket No. 654 at 2.)

20      The Court and the parties then proceeded to adjudicate the

21 dispute in the Wrongful Levy Action.  The parties filed cross-motions

22 for summary judgment on whether the Government's levies were wrongful

23 under the Internal Revenue Code.  As the briefing on those motions

24 advanced, the Government changed a number of its positions, eventually

25 arguing that the dispute should be adjudicated in the Forfeiture

26 Action as originally urged by Honig. (<u>See, e.g.</u>, WLA Docket No. 49 at

27 2.)  For example, at the May 17, 2010 hearing on the summary judgment

28 motions, the Government argued that, "[i]f the real issue is how the

proceeds are going to be distributed and the claims on that, the
wrongful levy case – the wrongful levy vehicle isn't the vehicle that
should be used.  It should have been in the forfeiture action, in
motions for distribution, or perhaps, I suppose, even an
interpleader." (WLA Docket No. 59 at 8.)  The Government's arguments
made clear that Honig could obtain the desired relief – an order that
his interests are superior to the Government's interests – in the
Forfeiture Action without showing that the levies were "wrongful," as
is required to prevail on a wrongful levy claim.  (<u>See, e.g.</u>, WLA
Docket No. 59 at 9 ("regardless of the lien priorities, which is
clearly important for distributing the funds, that doesn't go to the
issue of wrongful levy").)  In light of the Government's changed
positions, the Court provided all parties notice of its intent to
reconsider the denial of Honig's motion to intervene in the Forfeiture
Action.  (<u>See</u> FA Docket No. 680.)

**II.   RECONSIDERATION OF DENIAL OF MOTION TO INTERVENE**

On November 2, 2009, Honig filed a motion to intervene in the
Forfeiture Action. (FA Docket No. 635.)  To intervene as of right, the
applicant must meet all elements of the four-part test enunciated by
the Ninth Circuit: (1) the application must be timely; (2) the
applicant must have a significantly protectable interest relating to
the property that is the subject of the action; (3) the applicant must
be so situated that the disposition of the action may as a practical
matter impair or impede the applicant's ability to protect that
interest; and (4) the applicant's interest must not be adequately
represented by the existing parties in the lawsuit.  <u>United States v.</u>
<u>Aerojet Gen. Corp.</u>, 606 F.3d 1142, 1148 (9th Cir. 2010).  "In
determining whether intervention is appropriate, courts are guided

1   primarily by practical and equitable considerations, and the

2   requirements for intervention are broadly interpreted in favor of

3   intervention." Id. (quoting United States v. Alisal Water Corp., 370

4   F.3d 915, 919 (9th Cir. 2004)).

5        The Government argued previously that Honig may not intervene as

6   of right because his request was untimely and he would suffer no

7   impairment in being denied intervention.  (FA Docket No. 648 at 10-

8   12.)[7]  As noted above, the Court denied Honig's motion to intervene as

9   of right by adopting the position advocated by the Government that

10  Honig would suffer mere inconvenience by litigating the issue in the

11  Wrongful Levy Action instead.  (FA Docket No. 654 at 2 (citing Blake

12  v. Pallan, 554 F.2d 947, 954 (9th Cir. 1977); DBSI/TRI IV Ltd.

13  Partnership v. United States, 465 F.3d 1031, 1037 (9th Cir. 2006));

14  see also FA Docket No. 648 at 12 (citing same authority).)  It is now

15  clear that adopting the Government's position was erroneous.  The

16  relief sought by Honig both in intervening in this case and in filing

17  the Wrongful Levy Action was an order declaring that his interests in

18  the Fee Awards and Seized Properties are superior to the Government's

19  interests in those assets, enabling him to recover from the Fee Awards

20  and Seized Properties without encumbrance from the Government.  Honig

21  can obtain that relief in the Forfeiture Action without a showing that

22  the tax levies are "wrongful" within the meaning of the Internal

23  Revenue Code.  (See, e.g., WLA Docket No. 59 at 9.)  That is

24  significant given the Government's argument that, regardless of

25  Honig's priority over the Government, Honig still cannot establish the

26

27       [7]  Optional also filed an opposition arguing that the motion was
    untimely and that Honig would suffer no impairment.  (FA Docket No.
28  649.)  The Court reviewed these arguments and finds them unpersuasive.

1    wrongfulness of the levies as needed to prevail on a claim for

2    wrongful levy.  (<u>See, e.g.</u>, WLA Docket No. 30 at 16-17.)  Accordingly,

3    impairment to Honig's ability to protect his interests is clear –

4    disallowing intervention would impose an additional hurdle to

5    obtaining relief, a hurdle the Government contends is insurmountable.

6        The Government also previously argued that Honig failed to show

7    that the application is timely.  The Court considers three factors in

8    evaluating timeliness:  (1) the stage of the proceedings at which the

9    applicant seeks to intervene; (2) the prejudice to other parties; and

10   (3) the reason for and length of the delay.  <u>Alisal Water</u>, 370 F.3d at

11   921.  While post-judgment intervention is generally disfavored, <u>see</u>

12   <u>Calvert v. Huckins</u>, 109 F.3d 636, 638 (9th Cir. 1997), the stage of

13   the litigation is not dispositive, <u>see</u> <u>NAACP v. New York</u>, 413 U.S.

14   345, 365-66 (1973).  Indeed, courts have generally allowed post-

15   judgment intervention where doing so would not prejudice the parties

16   or substantially interfere with the orderly process of the court.  <u>See</u>

17   7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal</u>

18   <u>Practice and Procedure</u> § 1916 (3d ed. 2010).  The timing of the

19   intervention here has not prejudiced any other party.  The Court notes

20   that Honig is not filing a claim to the Seized Properties to compete

21   with DAS's or Optional's claims, but rather seeks only to have

22   priority over the Government's interests.  (<u>See, e.g.</u>, FA Docket No.

23   651 at 5 (recognizing that "counsel would be unable to execute their

24   liens against the properties if the courts determine the properties

25   belong to Optional and not the Kim claimants.").)[8]  The Court also

26

27        [8]  Honig at times suggested that he is seeking to enter this case
     as a late claimant.  (<u>See, e.g.</u>, FA Docket No. 635 at 12.)  But his
28   briefing on the motion to intervene clarified that he does not seek to

7

1  discerns no prejudice in allowing Honig to contest ownership in the

2  Fee Awards.  Moreover, allowing intervention at this time will not

3  interfere with the process of the court, as these matters are

4  ancillary to the issues on appeal.  Lastly, Honig has a good

5  explanation for the timing of his motion to intervene; namely, that

6  the Government did not issue the notices of levy until 2009.  See

7  Section IV.A.[9]  The request to intervene is timely.

8      Accordingly, the Court finds that Honig is entitled to intervene

9  in this action as of right.  The Court **VACATES** the December 17, 2009

10 Minute Order (FA Docket No. 654) and **GRANTS** Honig's motion to

11 intervene.

12 **III. JURISDICTION FOR GRANTING REQUESTED RELIEF**

13     Both the Government and Optional initially challenged Honig's

14 ability to intervene and adjudicate the priority issues on the ground

15 that the Court lacks jurisdiction.  (See FA Docket No. 648 at 4; FA

16 Docket No. 649 at 2.)[10]  The Court ultimately concludes that it has

17 jurisdiction over the dispute regarding the Fee Awards, but does not

18 at this time have jurisdiction over the dispute regarding the Seized

19 _____

20 be a claimant.  (FA Docket No. 650 at 10 n.4 ("[M]oving counsel is

21 seeking only to intervene post-judgment to remove IRS levies, not file
   a late claim.").)

22     [9]  The Court notes that Honig has been diligent in seeking relief

23 since the Notices of Levy were issued.  Honig filed his motion for an
   order recognizing his priority over the Government roughly six weeks

24 after the Notices of Levy were issued.  Honig filed his motion to
   intervene roughly three weeks after the Court denied his motion for an

25 order recognizing his priority over the Government.

26     [10]  Although not entirely clear, the Government appears to now

27 agree that the Court has jurisdiction to resolve the disputes in the
   Forfeiture Action.  (See WLA Docket No. 65 at 2 ("The Court has
   jurisdiction over the Forfeiture Assets and the Fee Awards in the

28 forfeiture proceedings.").)

1  Properties.

2       **A.   Jurisdiction Over Fee Award Dispute**

3       The Court has jurisdiction to resolve disputes about ownership of

4  fees awarded in this case.  <u>See</u> <u>Astrue v. Ratliff</u>, __ S. Ct. ___, 2010

5  WL 2346547, at *3 (June 14, 2010) (following attorney's intervention

6  into case in which fees were awarded, deciding to whom those fees are

7  payable); <u>Gilbrook v. City of Westminister</u>, 177 F.3d 839, 852, 872

8  (9th Cir. 1999) (same).  That the Court's judgments on the merits are

9  currently on appeal does not impact the Court's jurisdiction to

10  resolve the pending dispute.  A district court generally loses

11  jurisdiction following a notice of appeal to adjudicate those aspects

12  of the case involved in the appeal.  <u>Griggs v. Provident Consumer</u>

13  <u>Disc. Co.</u>, 459 U.S. 56, 58 (1982).  With respect to Honig's interest

14  to the Fee Awards, however, resolution of that issue is unrelated to

15  the merits of DAS's and Optional's pending appeal.  Moreover, the

16  Ninth Circuit has made it clear that district courts retain

17  jurisdiction to decide issues regarding attorney's fees after an

18  appeal is taken.  <u>See, e.g.</u>, <u>Masalosalo by Masalosalo v. Stonewall</u>

19  <u>Ins. Co.</u>, 718 F.2d 955, 956-57 (9th Cir. 1983).

20       Accordingly, the Court has jurisdiction to resolve the dispute

21  over the Fee Awards.

22       **B.   Jurisdiction Over Seized Properties Dispute**

23       The Court generally possesses ancillary jurisdiction to

24  adjudicate competing claims regarding distribution of property within

25  its possession.  <u>See</u> <u>United States v. Wingfield</u>, 822 F.2d 1466, 1470-

26  71 (10th Cir. 1987).  Thus, as a general matter, the Court has

27  jurisdiction to adjudicate the Government's and Honig's dispute over

28  priority of their interests in the Seized Properties.  The Court finds

that it lacks jurisdiction, however, because the dispute is not ripe for adjudication.  Article III of the United States Constitution limits federal courts to deciding only actual "cases" or "controversies."  Allen v. Wright, 468 U.S. 737, 750 (1984).  The case or controversy requirement includes several components, including the doctrine of ripeness.  Bova v. City of Medford, 564 F.3d 1093, 1095-96 (9th Cir. 2009).  Ripeness turns on when a dispute is properly adjudicated.  See id. at 1096.  "[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  Id. at 1096 (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).  "That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

The pending dispute centers on Honig's contention that he is entitled to recover a portion of the Seized Properties as payment for his services to the Kim Claimants.  DAS and Optional have appealed the Court's judgments awarding the Seized Properties to the Kim Claimants and the Court has stayed distribution of the Seized Properties pending resolution of that appeal.  (FA Docket Nos. 607, 640, 644.)  As Honig himself recognizes, his ability to recover is contingent on the Kim Claimants succeeding on that appeal or succeeding at trial in the event the Ninth Circuit reverses and remands the case:

> Moving counsel's attorney fee liens against the properties can be satisfied only upon release of the properties to the Kim claimants after appeals and the final mandate is issued. . . . [C]ounsel would be unable to execute their liens against the properties if the courts determine the properties belong to Optional and not the Kim claimants.

(See FA Docket No. 651 at 5.)  Accordingly, there is no pending distribution of the Seized Properties and any distribution to Honig is dependent on the outcome of further litigation in this case.

In similar circumstances, the Ninth Circuit has found claims unripe for adjudication.  See In re: Lowenschuss, 170 F.3d 923, 932 (9th Cir. 1999) ("Because Sun's claim against the Pension Plan is contingent on the outcome of this undecided appeal, we decline to reach this issue as it is not yet ripe for review."); see also Blume v. Myers, No. CV-99-1423-HU, 2000 WL 210605, at *4 (D. Or. Feb. 22, 2000) (holding that dispute over Oregon Attorney General's claim to part of punitive damages awarded to the plaintiff was not ripe for adjudication because plaintiff's underlying punitive damages award was pending before the Oregon Supreme Court).  Thus, the Court finds that Honig's request for an order ruling that his interest in the Seized Properties is superior to the Government's interest is not ripe for adjudication at this time.

**IV.  HONIG'S PRIORITY OVER THE GOVERNMENT IN THE FEE AWARDS**

In the Wrongful Levy Action, the parties extensively briefed Honig's contention that he has priority over any Government claim to the Fee Awards in cross-motions for summary judgment.  (See WLA Docket Nos. 20, 22, 30, 37, 43, 45.)  The motions came on for a hearing on May 17, 2010.  In short, Honig seeks an order from this Court establishing that the Fee Awards belong to him rather than the Kim Claimants and, therefore, are beyond the Government's reach in its attempt to recover for the Kim Claimants' purported tax liabilities. The Court hereby incorporates the briefing and record in the Wrongful

1   Levy Action,[11] and holds that the Fee Awards are payable directly to

2   Honig.

3       **A.   UNDISPUTED FACTS**

4       All of the relevant facts are undisputed. (See Stip. of

5   Uncontroverted Facts ("SUF") (WLA Docket No. 22).) On March 19, 2006,

6   Honig entered into a representation agreement to represent the Kim

7   Claimants in exchange for payment of $2,800,000 in fees. (SUF 7-9,

8   Ex. 1.)  Other than an initial retainer, the agreement provided that

9   Honig would be paid at a later date from proceeds from the Seized

10  Properties and any Fee Awards given during the litigation. (SUF 10-

11  11, Ex. 1.)  In January 2007, Honig filed financing statements with

12  the California Secretary of State. (SUF 12-13.)  On February 9, 2007,

13  Honig filed a notice of lien with the United States Marshals Service.

14  (SUF 14.)  On February 22, 2008, Honig filed a notice of lien with the

15  Court Clerk. (SUF 15.)  To date, Honig has been paid $90,000 with

16  $2,710,000 remaining outstanding. (See SUF 28.)

17      On February 4, 2008, February 25, 2008, March 3, 2008, and

18  November 17, 2008, the Government assessed tax liabilities in the

19  amount of roughly $1,200,000 million against Erica Kim purportedly

20  owed for tax years 2003 through 2007. (See SUF 31, Ex. 6.)  On June

21  11, 2008, June 16, 2008, and February 9, 2009, the Government issued

22  Notices of Federal Tax Liens ("NFTLs") against Erica Kim's assets.

23  (See SUF 31, Ex. 7.)  On April 7, 2009, the Government issued Notices

24

25      [11]  The Government requests that the Court take judicial notice

26  of the filings in the Wrongful Levy Action briefing the merits of

    these arguments. (FA Docket No. 683.)  The Government's request is

27  **GRANTED**.  The Court takes judicial notice of the documents filed in

    the Wrongful Levy Action (Case No. 09-7568) at WLA Docket Nos. 1, 13,

28  20-22, 25, 28-31, 37, 43, 45-52, 58, 60, 61, 63, 65, and 66.

of Levy against Erica Kim's interests in the Fee Awards and Seized Properties.  (See SUF 32, Ex. 9.)

On April 7, 2009, the Government assessed tax liabilities in the amount of roughly $24,000,000 against Christopher Kim and Bora Lee. (SUF 34, Ex. 11.)  That same day, the Government issued NFTLs against Christopher Kim's and Bora Lee's assets.  (SUF 34, Ex. 12.)  Also on April 7, 2009, the Government issued Notices of Levy against Christopher Kim's and Bora Lee's interests in the Fee Awards and Seized Properties.  (SUF 35, Ex. 14.)

On March 26, 2008 and January 25, 2010, this Court awarded attorney's fees against the Government in the amounts of $1,172,137.90 and $282,650 respectively.  (FA Docket Nos. 440, 657.)  Those Fee Awards have been deposited with the Court Clerk.  The Government initially appealed the March 26, 2008 Fee Award, but subsequently dismissed that appeal.  (See FA Docket No. 676.)  The parties dispute whether Honig may collect those fees for his representation of the Kim Claimants or whether the Government may use them to reduce the amount of the Kim Claimants' purportedly outstanding tax debts.

**B.   ANALYSIS**

Honig argues that the Fee Awards belong to him, not the Kim Claimants, making his interest in those fees superior to any interest of the Government stemming from the Kim Claimants' purported tax liabilities.  In particular, Honig argues that fees awarded under the Civil Asset Forfeiture Reform Act ("CAFRA") are payable directly to a successful claimants' attorney rather than to the claimant.  Although the parties indicate that this issue has been raised to a number of courts, they have not cited to any authority actually resolving it. Thus, this is an issue of first impression with respect to CAFRA.

The Government argues preliminarily that the plain language of CAFRA unambiguously awards fees to claimants.  The Court disagrees. CAFRA provides that, "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for . . . reasonable attorney fees and other litigation costs reasonably incurred by the claimant."  28 U.S.C. § 2465(b).  The Government emphasizes that the statute provides for payment of fees "incurred by the claimant."  That phrase does not mean that the fees must be paid to the claimant, however.  The word "incur" is defined as "[t]o suffer or bring on oneself (a liability or expense)."  Black's Law Dictionary (8th ed. 2004).  Hence, the relevant language in CAFRA means simply that the United States is liable to pay the fees for which the claimant would otherwise be liable.  Thus, the plain language of the provision does not provide a ready answer to the issue.

The Court finds the history behind CAFRA particularly helpful in deciding that fee awards are payable directly to the claimant's attorney and not to the claimant.  Prior to CAFRA's passage in 2000, attorney's fees were routinely sought in forfeiture actions under the Equal Access to Justice Act ("EAJA").  United States v. $60,201.00 U.S. Currency, 291 F. Supp. 2d 1126, 1130 (C.D. Cal. 2003).  The EAJA provides that "a court shall award **to a prevailing party** other than the United States fees and other expenses" when the Government's position was not substantially justified.  28 U.S.C. § 2412(d)(1)(A) (emphasis added).  Thus, the EAJA affirmatively and expressly awards fees to the prevailing party.  "[P]ractically every statute that provides for attorneys' fees to the prevailing party grants the award directly to the party and not the party's counsel."  McCarty v.

<u>Astrue</u>, 505 F. Supp. 2d 624, 629 (N.D. Cal. 2007).  Indeed, the Supreme Court relied on that language in holding recently that fees awarded under the EAJA are payable to the prevailing party and not to the attorney.  <u>See</u> <u>Ratliff</u>, 2010 WL 2346547, at *4-5, 7; <u>see also</u> <u>Reeves v. Astrue</u>, 526 F.3d 732, 735 (11th Cir. 2008) ("We conclude the statute's explicit reference to the 'prevailing party' unambiguously directs the award of attorney's fees to the party who incurred those fees and not to the party's attorney.").  Notably, courts had reached this conclusion prior to the passage of CAFRA.  <u>See</u> <u>Phillips v. Gen. Servs. Admin.</u>, 924 F.2d 1577, 1582 (Fed. Cir. 1991) ("As the statute requires, any fee award is made to the 'prevailing party,' not the attorney.")

In drafting CAFRA, however, Congress did not adopt the EAJA's language mandating fee awards "to a prevailing party," but rather provided that the "United States is liable" for fees incurred when the claimant prevails.  As this Court has previously recognized in analyzing the interplay between fee awards under CAFRA and the EAJA, had Congress intended to maintain the status quo it could have easily done so.  <u>See</u> <u>$60,201.00 U.S. Currency</u>, 291 F. Supp. 2d at 1130.  In drafting CAFRA's fee provision, however, Congress omitted the EAJA's language affirmatively directing payment to the prevailing party, and instead included passive language that is silent on its face as to whom fees should be paid.[12]  While CAFRA's language does not

---

[12]  As noted by the Government, the Court is cognizant that Congress could have used more precise language in CAFRA in directing that fees be awarded to counsel rather than the prevailing party.  <u>See</u> <u>Ratliff</u>, 2010 WL 2346547, at *6 (noting that 42 U.S.C. § 406(b)(1)(A) provides for fees "for payment to such attorney," which shows that Congress knows how to create an explicit direct fee requirement where it desires to do so).  Unfortunately, the language in CAFRA does not

affirmatively instruct that fees are payable directly to the
prevailing party's attorney, the language used in CAFRA parallels
language found – prior to CAFRA's passage – to confer fee awards
directly to the prevailing party's attorney.  Jensen v. Dept. of
Transp., 858 F.2d 721, 724 (Fed. Cir. 1988) (holding fee awards under
the Civil Service Reform Act are payable directly to the attorney and
not to the client); see also 5 U.S.C. § 7701(g)(1) (attorney's fee
provision in the Civil Service Reform Act providing that "the Board .
. . may require payment by the agency involved of reasonable attorney
fees incurred by an employee . . . if the employee . . . is the
prevailing party . . .").  Congress's decision not to include
affirmative language directing payment "to the prevailing party,"
coupled with its inclusion of language similar to another statute that
had been interpreted as making fees payable directly to the prevailing
party's attorney, persuade the Court that fees awarded under CAFRA are
payable to the prevailing party's attorney and not to the prevailing
party.

     This reading of CAFRA is fully consistent with the legislative
intent.  CAFRA was passed in response to "the government's too-zealous
pursuit of civil and criminal forfeiture."  United States v. Khan, 497
F.3d 204, 208 (2d Cir. 2007).  One of the primary goals of the statute
is to "give owners innocent of any wrongdoing the means to recover
their property."  United States v. Certain Real Prop., 579 F.3d 1315,
1322 (11th Cir. 2009); see also United States v. One Rolex 18k Gold
Watch With Light Brown Crocodile Style Wrist Band, __ F. Supp. 2d

---

provide a ready answer either way.  For the reasons discussed herein,
the more plausible interpretation of CAFRA is that it awards fees
directly to the attorney.

1  ____, 2010 WL 1006556, at *2 (D.P.R. Mar. 17, 2010) (CAFRA's fee-
2  shifting provision furthers that goal).  Interpreting CAFRA to require
3  that fees be awarded directly to a claimant's attorney helps achieve
4  that goal by increasing the possibility that successful attorneys will
5  be paid for their work.
6      For the above reasons, the Court concludes that the Fee Awards
7  belong to Honig and never belonged to the Kim Claimants.  Accordingly,
8  they should be paid directly to Honig without any encumbrance by the
9  Government.

10  **V.   CONCLUSION**

11      For the foregoing reasons, the Court hereby **RECONSIDERS** its
12  denial of Honig's motion to intervene into this case, and **GRANTS** the
13  motion to intervene.  The Court **ORDERS** that the Fee Awards are payable
14  directly to Honig.  Honig is **ORDERED** to submit a proposed order
15  regarding disbursement of the Fee Awards currently deposited with the
16  Court Clerk.  The Court **DENIES** as unripe Honig's request for a ruling
17  that his interests in the Seized Properties are superior to the
18  Government's interest.

19      **IT IS SO ORDERED.**

20

21  DATED:    July 19, 2010

22

23      _____

24                     **AUDREY B. COLLINS**

25      **CHIEF UNITED STATES DISTRICT JUDGE**

26

27

28

17