UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>REAL PROPERTY LOCATED AT 475 MARTIN LANE, BEVERLY HILLS, CALIFORNIA, et al.,<br><br>　　　　　　Defendants. | CV 04-2788 ABC (PLAx)<br><br>[Consolidated with CV 04-3386 ABC (PLAx), CV 05-3910 ABC (PLAx), and CV 09-7568 ABC (PLAx)]<br><br>ORDER RE: PRELIMINARY INJUNCTION |

Pending before the Court is Claimant Optional Capital Inc.'s Request for a Preliminary Injunction barring East West Bank from proceeding with a trustee sale of the real property at 924 N. Beverly Drive, Beverly Hills, California ("Motion"). On July 1, 2011, the Court issued a temporary restraining order pending resolution of the request for preliminary injunction, and an order to show cause ("OSC") establishing a briefing schedule. On July 6, 2011, Optional and Intervenor Eric Honig each filed a Response to the OSC. On July 11, 2011, East West Bank filed an Opposition to the Issuance of a Preliminary Injunction. On July 13, 2011, Optional and Honig filed Replies. The matter came on for hearing on Monday, July 18, 2011.

Upon consideration of the materials submitted by the parties, argument of counsel, and the case file, the Court hereby **GRANTS** the Motion.

**I. BACKGROUND**

This Order assumes familiarity with the background of this case. As such, the Court will set forth only as much background as is relevant to the disposition of this Motion.

This matter started out as a forfeiture case filed in May 2005 in which the United States sought the forfeiture of certain assets in possession of the Kim Claimants. The Government seized various Kim assets located in the United States, including the residence at 924 N. Beverly Drive ("property"). Erica Kim purchased that property in 2002 using a $1.1 million loan provided by United Commercial Bank. East West Bank is UCB's successor in interest as to that loan and holds the Promissory Note and Deed of Trust.

On March 13, 2007, the Court granted the Kim Claimants' summary judgment motion against the Government's forfeiture case; the Ninth Circuit affirmed that decision on October 3, 2008. The Government's forfeiture case was therefore extinguished. Following additional litigation, the Court found that the other claimants' claims had also been adjudicated and were therefore extinguished. The Ninth Circuit reversed and, by its mandate issued January 28, 2011, remanded the matter to this Court for it to adjudicate the competing claims of all claimants to the seized properties. These competing claims to the property have yet to be adjudicated.

Claimant East West Bank ("EWB") issued a Notice of Trustee Sale ("NTS") indicating that it would sell the property on July 7, 2011; the sale was postponed to July 20, 2011. EWB states that it is

entitled to foreclose on the property and conduct a trustee's sale because Erica Kim has been in default on her loan since March 2008 and has been living at the property without paying property taxes or any other costs. As of June 30, 2011, with accrued unpaid payments, late charges, and fees, Erica Kim's current outstanding unpaid loan balance is approximately $1,471,461.95. Optional and Honig seek to enjoin EWB's planned trustee sale on the ground that such a sale jeopardizes their claims to the property. Those claims include Optional's putative interest in the property as asserted through its claim to the property based on Erica Kim's alleged conversion of Optional's assets, and a judgment lien for the 37 billion Korean won judgment it obtained in a related case. Honig also has a charging lien for attorney's fees. The Court issued a TRO to maintain the status quo pending briefing on the preliminary injunction.

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of hardships tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Defense Council Inc., 129 S.Ct 365, 374 (2008). While Winter expressly rejected the view that a mere "possibility" of irreparable harm could be sufficient to justify a preliminary injunction in some instances, it did not otherwise reject the so-called "sliding scale" approach, and the "serious questions" formulation in particular, employed in a number of circuits, including the Ninth Circuit. See Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-1133 (9th Cir. 2011) (holding

that the sliding scale approach remains viable after <u>Winter</u>, as long as it is applied as part of the four-element <u>Winter</u> test). Thus, under the "serious questions" variation of the sliding scale approach, (1) "serious questions going to the merits," and (2) a balance of hardships that tips sharply towards the movant can support issuance of a preliminary injunction, so long as the movant also shows that there is (3) a likelihood of irreparable injury and (4) that the injunction is in the public interest. <u>Alliance for the Wild Rockies</u>, 632 F.3d at 1135.

### III. DISCUSSION

The Court finds that a preliminary injunction is warranted under the "serious questions" approach. In summary, EWB's submission opposing a preliminary injunction has not dissuaded the Court from the reasoning it set out briefly in its order issuing the TRO.

**A. Optional and Honig have Demonstrated the Existence of a "Serious Question" Going to the Merits.**

Optional and Honig argue that their interests in the property will be jeopardized if EWB goes forward with the trustee sale. Specifically, Optional contends that Erica Kim purchased the property using money that was wrongfully converted from Optional, resulting in a constructive trust in Optional's favor that has priority over EWB's interest in the property. Optional contends that selling the property in a trustee sale will diminish its value. EWB contends that Optional's position is meritless because, as an evidentiary matter, Optional cannot trace the money from its accounts, through Erica Kim, to the property. EWB also asserts that as a bona fide lender without notice of Optional's claim, its lien on the property is superior even

if Optional can prove its constructive trust. EWB also asserts that Optional's constructive trust claim as to the property was extinguished by res judicata in Optional's related case against the Kims. As such, EWB contends, Optional cannot demonstrate a constructive trust or any claim to the property superior to EWB's lien.

The Court notes that most of the issues on which this motion turns are raised for the first time herein and in a fairly cursory manner that is insufficient to support a strong prediction as to their merits. For example, EWB's res judicata argument and its argument that it is a bona fide lender without notice have not been raised before, and they are briefed herein only in passing; EWB has not supported its bona fide lender argument with citations to law or to evidence. Its bona fide lender argument cannot, therefore, prevail even in opposition to a preliminary injunction. Indeed, at the May 2, 2011 status conference, EWB indicated that it would file a motion to resolve lien priority so that it could establish, to the Court's satisfaction, its right to foreclose. Evidently, at that time, EWB acknowledged that the competing claims to the property counseled against unilaterally foreclosing on the property.

Substantively, although, as EWB points out, some of the evidentiary issues relevant to Optional's claim were addressed in the March 13, 2007 summary judgment order dismissing the Government's forfeiture claim, the impact of those determinations has yet to be fleshed out as to Optional's claim. Indeed, the Ninth Circuit remanded the matter to this Court for the express purpose of adjudicating the competing claims, including Optional's claim and EWB's claim. This supports the view that there is at least a "serious

question" that Optional's claim to the property may be superior to EWB's claim.

There are also serious legal questions implicated by EWB's desire to sell the property, especially since the outcome of the sale is not clear. For example, EWB asserts that Optional's two lis pendens recorded against the property are sufficient to notify any purchaser that title to the property is in dispute, and that Optional's rights are therefore preserved under Cal. Code Civ. P. § 405.24. But it appears that EWB expects that no one will purchase the property and that EWB would assume ownership. See Honig Response 2:23-28, and Reply 3:6-8. EWB has not explained what would happen in that scenario.

As to Honig's charging lien, EWB has not disputed that a trustee's sale would extinguish that lien. Such an outcome may or may not be just, but it is a serious question as to which the present briefing is insufficient to support a strong prediction on the merits. As discussed and agreed to at the May 2 status conference, the proper vehicle for determining lien priority is the motion that EWB stated it would file – a motion to adjudicate lien priority – not a trustee sale not subject to Court oversight.

The Court therefore concludes that there is at least a serious question that Optional's and Honig's interests in the property would be unjustifiably and negatively affected by EWB's contemplated trustee sale.

**B. The Balance of Hardships Tips Sharply In Favor of Optional and Honig.**

That EWB wants to remove Erica Kim from a property she has been in default on and resided in for free for approximately the last three

years is certainly understandable. However, EWB has not explained the urgency behind undertaking a trustee sale at this moment rather than first filing the lien priority motion it said it would bring. Perhaps EWB believed a lien priority motion would result in too much delay, but given the recent events in Switzerland, EWB should have recognized that this Court would not view favorably any party's unilateral attempt to disturb the assets under the Court's jurisdiction. EWB's attempt to move forward with the trustee sale before establishing lien priority has therefore only delayed EWB's remedy.

Furthermore, even if EWB were correct that prior motion work would delay its remedy, the Court cannot find that such a delay works any great hardship here. While delaying EWB's ability to foreclose is regrettable in light of Erica Kim's long-standing default on the property, that delay does not constitute irreparable harm. In contrast, as discussed below, the trustee sale may irreparably harm Optional's and Honig's ability to realize their liens and other interests.

Finally, no party has discussed the availability of a different procedure (other than the trustee sale) or perhaps an agreement that would remove Erica Kim from the property but not jeopardize competing claims or existing liens. Unless the trustee sale EWB contemplates is tantamount to a last resort invoked for an urgent reason, the Court would be reluctant to allow the sale to go forward under the circumstances of this case.

The Court concludes that the balance of hardships tips sharply in Optional's and Honig's favor.

**C. Optional and Honig Face a Likelihood of Irreparable Injury.**

Optional and Honig face a likelihood of irreparable injury on two bases. First, given the depressed state of the real estate market today, of which the Court *sua sponte* takes judicial notice, if the property sells, there is a likelihood that it will be at a depressed price. EWB will therefore realize fewer proceeds to pay other lienholders, such as Optional and Honig. Another way to state this injury is that the value of the property is likely to be reduced by selling it now. Second, as mentioned above, although it is unclear how a trustee sale will operate as to some of the other liens, it seems clear that a sale would extinguish Honig's charging lien. Having a lien extinguished is an irreparable injury. Optional and Honig therefore face a likelihood of irreparable injury.

**D. An Injunction is in the Public Interest.**

Finally, an injunction is in the public interest. There is a strong public interest in the orderly disposition of the assets in this case. The issues must be fully vetted, including lien priority and whatever other issues are relevant, before the properties are distributed or otherwise allowed to be alienated. The Ninth Circuit ordered this Court to adjudicate the competing claims, and the public interest is best served by this Court's carrying out that duty. In contrast with the Swiss account, the property at issue in this Motion is within the Court's jurisdiction and is subject to its control. The public interest is best served by this Court's exercising that jurisdiction and forestalling anything like the loss of assets that

occurred in Switzerland.[1]

**E. The Trustee Sale Is Also Enjoined Under the Court's Inherent Authority.**

As distinct from the preliminary injunction standard discussed above, the Court finds that enjoining a trustee sale pending further proceedings is within the Court's inherent case-management authority. As all parties are aware, the Ninth Circuit pointed out that the Court retains ancillary jurisdiction to adjudicate the remaining claims, and indeed has the duty to do so. Allowing the property to be disposed of in a trustee sale before adjudicating the competing claims is inconsistent with this duty.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that a order enjoining the trustee sale is warranted under both the preliminary injunction standard and as a function of the Court's inherent authority. The Court therefore **ENJOINS** East West Bank from undertaking a Trustee Sale with respect to the property at 924 N. Beverly Drive, Beverly Hills, California, pending further proceedings in this case.

DATED: July 18, 2011

*[signature: Audrey B. Collins]*

_____
**AUDREY B. COLLINS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[1] The Court is not implying that EWB's <u>conduct</u> is akin to the conduct of the parties responsible for what occurred in Switzerland. Rather, the Court is pointing out that there may be the same undesirable results: that the property's value may be diminished and that other claimants may lose the opportunity to have their claims properly adjudicated.