1   **RALPH ROGARI  (SBN: 139422)**
    **ROGARI LAW FIRM**
2   12400 Wilshire Blvd. Suite 400
    Los Angeles, CA 90025
3   Tel.: (310) 207-0059
    roglaws@yahoo.com

4   **MARY LEE, Esq. (SBN: 177085)**
    **LAW OFFICES OF MARY LEE**
    3250 Wilshire Blvd., Suite 1750
5   Los Angeles, CA 90025
    Tel.: (213) 447-1902
6   leemarylaw@aol.com

7   Attorneys for Claimant OPTIONAL CAPITAL, INC.

8               **UNITED STATES DISTRICT COURT**
9            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10  UNITED STATES OF AMERICA,          NO.  CV 04-2788 ABC (Plax)
                                        NO.  CV 04-3386 ABC
11                    Plaintiff,        NO.  CV 05-3910 ABC

12             v.                       (CONSOLIDATED CASES)

13  REAL PROPERTY LOCATED AT 475        **APPLICATION FOR ORDER TO SHOW**
    MARTIN LANE, BEVERLY HILLS,         **CAUSE; MEMORANDUM OF POINTS AND**
    CALIFORNIA,                         **AUTHORITIES; DECLARATION OF RALPH**
14                                      **ROGARI**
                      Defendant.
15                                      Final Judgment Entered: May 23, 2013

16  ALL FUNDS IN CREDIT SUISSE PRIVATE
    BANKING ACCOUNT,
17
                      Defendant.
18

19         Claimant and judgment creditor Optional Capital, Inc. ("Optional"), hereby applies to this

20  Honorable Court for issuance of an Order to Show Cause requiring former claimant DAS

21  Corporation (DAS) to appear and show cause why it should not be held in contempt of court for

22  interfering and not complying with the Final Judgment entered in these proceedings on May 23,

23  2013. (CV-04-2788, dk no. 1187; CV-05-3910, dk no. 240)

24

25

                                      1

By that *in rem* Final Judgment, Optional was adjudicated the owner of "all funds in Credit Suisse Private Bank account No. 0251-844548-6 in the name of Alexandria Investment, LLC  as of August 8, 2005," which is the date the government served its arrest warrant.  (CV-04-2788, dk no. 1187; CV-05-3910, dk no. 240 pg. 4, lines 10-12) (referred to as the "Swiss funds.")   In accordance with its finding that Optional was the true owner of the Swiss funds, the court ordered the Swiss funds be returned, with accrued interest, to Optional's attorney Ralph Rogari.  (CV-04-2788, dk no. 1187; CV-05-3910, dk no. 240, pg.5, lines 5-12).   The court also retained jurisdiction to oversee compliance with its Judgment. (CV-04-2788, dk no. 1187; CV-05-3910, dk no. 240 pg. 5, lines 14-17).

On February 2, 2011, DAS Corporation took possession of 14 billion won ($12,422,250.40) of the Swiss funds, with full knowledge of this proceeding and Optional's ownership claim.  DAS has admitted, in proceedings before this Court, that it took possession of the funds.   DAS also admitted, prior to entry of the Final Judgment, that its possession of the funds did not deprive the Court of jurisdiction to adjudicate ownership of the funds.   DAS has had knowledge of the Judgment since 2013, but has thumbed its proverbial nose at it, refusing to return the funds to Optional as the Judgment directs.

Pursuant to Federal Rules of Civil Procedure 70 and 71 and the court's inherent authority, Optional asks this Court to enforce the judgment against DAS through civil contempt proceedings. Such proceedings are initiated by the issuance of the requested Order to Show Cause which Optional will then serve on DAS Corporation.   Because it may be necessary to serve DAS through the Hague convention, Optional requests the hearing be in 90 days.

This Application is based upon the attached Authorities and Declaration of Ralph Rogari, as well as all pleadings and records on file in these consolidated proceedings.

1    Dated: July 23, 2018

2                                              ROGARI LAW FIRM & MARY LEE

3                                              By: _____
                                               Ralph Rogari, Attorneys for Claimant
4                                              Optional Capital, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Claimant Optional Capital, Inc.'s Motion for Order to Show Cause

## DECLARATION OF RALPH ROGARI

I, RALPH ROGARI declare:

1.      I am an attorney at law duly licensed to practice before all courts in the State of California, the U.S. District Court of Central California, and the U.S. Court of Appeals for the Ninth Circuit.  Together with attorney Mary Lee, I have represented Optional in these consolidated civil asset forfeiture proceedings, a related civil action <u>Optional Capital. Inc. v. Kyung Joon Kim, et al.</u>, case no. CV-04-3866-ABC, and multiple related California court actions for the past 14 years.  I am submitting this declaration in support of Optional's request to institute a contempt proceeding against DAS Corporation.  If called and sworn as a witness, I could and would competently testify to the facts stated in this declaration of my own personal knowledge.

2.      At all times, Optional has claimed ownership of the funds in the Credit Suisse Private Bank Account No. 0251-844548-6 (the "Swiss funds"), which constitute one of the defendant properties in case CV 05-3910ABC.   Competing claims to the funds were also filed by DAS Corporation, Christopher Kim and Alexandria Investments, LLC.   [CV-05-3910, dk nos. 17, 44, 12, 9.]  On May 17, 2013, following a bench trial, this Court entered its Findings of Fact and Conclusions of Law regarding ownership of the Swiss funds, which included the following Finding of Fact:

> Having heard the evidence presented at trial, the Court finds that Optional Capital, Inc., has sufficiently traced the proceeds and product of the 37.1 billion Korean won converted from it during the period of July 30, 2001 through November 5, 2001, to each of the following properties:
>
>         * * *
>
> (5)      All funds in Credit Suisse Private Banking Account No. 0251-844548-6 in the name of Alexandria Investment, LLC when the government served its arrest warrant on or about August 8, 2005.

Attached to this Declaration as Exhibit "1" is a copy of the court's Findings of Fact and Conclusions of Law. It is found in the court docket at CV-04-2788, dk. No 1183 and CV-05-3910,

1

1   dk. no 239. The above quoted finding is at pages 3-4.

2         3.      In its Conclusions of Law, the Court found a constructive trust in Optional's favor in

3   the Swiss funds, stating:

4         Because the Kims were working in concert to convert funds from Optional, and because the
          conversion scheme involved the Kims' purchases of Optional's stock, the Court finds that it
5         is appropriate to extend a constructive trust in Optional's favor to all of the revenue
          generated from the Kims' scheme as a whole, and to all of the assets purchased with those
6         revenues.

7         Thus, to the extent the Kims arguably obtained any portion of the above properties with
          monies derived from proceeds of their sale of stock purchased from Optional and not from
8         funds converted from Optional, it is still appropriate to extend a constructive trust over
          those properties because all of the Kims' revenue-generating conduct at Optional was part of
9         the same complex scheme to convert Optional's funds.

10        Based on the foregoing, the Court holds that a constructive trust in Optional's favor extends
          to all of the above-listed properties.
11
          These Conclusions of Law can be found in the attached Exhibit "1" at pages 3-4.
12

13        4.      The Court entered its Final Judgment on May 23, 2013. [CV-04-2788, dk no. 1187;

14   CV-05-3910, dk no. 240.]   By that judgment, Optional was adjudicated the owner of all funds in

15   Credit Suisse Private Bank account No. 0251-844548-6 as of August 8, 2005:

16        With respect to the claims of Optional Capital, Inc., IT IS HEREBY FOUND,
          ADJUDICATED and DECREED that Optional Capital, Inc. was and is, the owner of each of
17        the following defendant properties:
          …
18        Case number CV-05-3910
          …
19
          (5)     All funds in Credit Suisse Private Banking Account No. 0251-844548-6 in the name
20                of Alexandria Investment, LLC as of August 8, 2005;

21        A copy of the Final Judgment is attached to this Declaration as Exhibit "2."  It can be found

22   in the court file in CV-04-2788 at dk no. 1187 and in CV-05-3910 at dk no. 240.  The above quoted

23   provision is at pages 3-4.

24

25

2

5.     In accordance with the constructive trust and finding Optional to be the owner of the Swiss funds, the Judgment directed the funds, with accrued interest, be released and returned to Optional's attorney, Ralph Rogari:

> IT IS HEREBY FURTHER ORDERED that each of the above properties shall be released forthwith to Optional Capital, Inc., through its counsel of record, Ralph Rogari; and that all released currency shall include all accrued interest.
>
> IT IS HEREBY FURTHER ORDERED that any check(s) for the return of the defendant currency or accrued ·interest are to be made payable to Rehm & Rogari client trust fund, 12121 Wilshire Blvd., Suite 600, Los Angeles, CA 90025.

This provision of the Final Judgment can be found on page 7 of Exhibit "2" and on the same page in CV-04-2788, dk no. 1187 and CV-05-3910, dk no. 240.

6.     DAS was no longer a claimant when the case went to trial.   It had withdrawn its claim two years earlier, on April 4, 2011. [CV-04-2788, dk. no. 714.]  Its motion to be dismissed as a party claimant was consequently granted.  However, as relevant here, on April 29, 2011,  DAS was required to disclose to the court and Optional that all freezes on the Swiss funds had been lifted and that, with the assistance of the Kims, DAS had received 14 billion won of the Swiss funds.   [See CV-04-2788, dk. no. 733, minute order 4/25/11 and dk. No. 739, pg. 5]   A true and correct copy of the relevant writing containing DAS's admission it received 14 billion won of the Swiss funds is attached as Exhibit "3."

7.     As a result of the transfer of the funds to DAS, the Court permitted Optional to institute a contempt proceeding. [CV-04-2788, dk. no. 743.]   In response, DAS and the Kims argued contempt did not lie because the court had never issued any order that specifically prohibited any of the Swiss funds from being transferred to DAS while the action was pending.  [CV-04-2788, dk. no. 756 pg. 17 of 32 – pg. 20-32.]  DAS also argued the status quo had not changed and expressly agreed that its possession of 14 billion won of the Swiss funds did not deprive the Court of jurisdiction to determine ownership of those funds pursuant to the court's *in rem* jurisdiction. [CV-

3

1   04-2788, dk. no. 756 pg. 21 of 32 – pg. 22-32.]  As  DAS's agent, John Karaczynski, specifically

2   stated:

> As a result, contrary to Optional's argument, the status quo in this case has not changed: the
> Court's in rem jurisdiction over the Swiss funds remains unaffected by the transfer of those
> funds to Korea, and the Court may continue to adjudicate the litigants' rights to those assets.
> *United States v. Hartog,* 513 F.3d 12 991, 998 (9th Cir. 2008) ("Where an act or omission
> giving rise to the forfeiture occurs in a district, the corresponding district possesses
> jurisdiction over the forfeiture action regardless of its control over the res."); *United States v.
> All Funds in Account in Banco Espanol de Gredito, Spain,* 295 F.3d 23, 27 (D.C. Cir. 2002)
> (holding with respect to funds located in Spain, "Spain's compliance and cooperation
> determines only the effectiveness of the forfeiture orders of the district courts, not their
> jurisdiction to issue those orders.").   [CV-04-2788, dk. no. 755 pg. 15 of 19.]

9       8.     The court agreed with DAS's position and dismissed the contempt proceeding.   (CV-

10  04-2788, dk. no. 780).    Optional then filed a state court action against DAS and others in Los

11  Angeles Superior Court, *Optional Capital, Inc. v. DAS Corporation et. al.,* No. BC474472, seeking

12  inter alia, damages for a fraudulent transfer.  When the final judgment was entered in this case,

13  Optional's state court action was pending before the court of appeal and DAS's answering brief had

14  been filed the day before. I gave notice of the judgment to DAS, though its counsel, but my demand

15  that it return the funds as required by the judgment was rejected.  I then filed a Request for Judicial

16  Notice (RJN) with the court of appeal, asking it to take judicial notice of the Final Judgment, which

17  was served on DAS.   In response, DAS filed an objection to the RJN, thereby acknowledging it had

18  notice of the Final Judgment. A copy of the Court of Appeal's docket is attached as exhibit "4."

19      9.     On January 6, 2014, in *Optional Capital v. DAS Corp.* (2014) 222 Cal.App.4th 1388,

20  the court of appeal reversed the trial court and reinstated the case against DAS.  Following remand,

21  and on or about August 13, 2014, another copy of the Final Judgment was served on DAS through

22  its counsel in those state court proceedings.

23      10.    The state court proceedings are still ongoing.  Demand has been made on DAS to

24  comply with the judgment and return the Swiss funds to Optional, however, it has resisted every

25

4

attempt and has yet to return even a single dollar to Optional.  Not only that, it is now attempting to collaterally attack this court's Final Judgment in the State Court.

11.     Because DAS has repeatedly interfered with, and has not complied with, this court's May 23, 2013 Final Judgment directing the release and return of the Swiss funds to Optional, Optional requests that the court initiate a contempt proceeding.    Because DAS is no longer a party and it may be necessary to serve it with the Order to Show Cause through the Hague convention, Optional requests that the hearing date be scheduled for November 2018.

I declare, under penalty of perjury, under the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Date: July 23, 2018

RALPH ROGARI

# EXHIBIT "1"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CV 04-2788 ABC (PLAx) |
| | CV 04-3386 ABC (PLAx) |
| Plaintiff, | CV 05-3910 ABC (PLAx) |
| v. | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| REAL PROPERTY LOCATED AT 475 MARTIN LANE, et al., | Trial Date: April 30, 2013 |
| Defendants. | |

Commencing on April 30, 2013, the claims of Claimant Optional Capital Inc. ("Optional"), and the Kim Claimants to properties in each of the above consolidated actions were tried by the Honorable Audrey B. Collins, United States District Court Judge, without a jury. On May 1, 2013, the claimants informed the Court that they achieved a settlement. The claimants orally withdrew certain of their claims, and these withdrawals were later confirmed by Notices.[1]

_____

[1] On May 2 and 3, 2013, Notices confirming the following oral representations were filed: that all Kim Claimants except Se Young Kim and Young Ai Kim withdrew all of their claims (docket no. 1158), and that Optional withdrew its claims to the properties claimed by Se Young Kim and Young Ai Kim (docket no. 1161). The Kim Claimants' counsel withdrew certain of his attorneys' fee liens (docket no. 1157).

Exhibit "1"

1   As a result of these withdrawals, the only remaining claims were

2   (1) Optional's claims to all of the properties except the properties

3   claimed by Se Young Kim and Young Ai Kim, and (2) Se Young Kim and

4   Young Ai Kim's claims.  Because all other claims were withdrawn, these

5   remaining claims stood unchallenged.  The settlement was put on the

6   record under seal.

7   Although none of the remaining claims were contested, Optional

8   wished to present to the Court further evidence tracing the funds the

9   Kim Claimants converted from Optional to the properties to which

10  Optional had outstanding claims.  The Kim Claimants did not object to

11  Optional's request and, having no further claims to litigate, the Kim

12  Claimants left the proceedings.  The Court granted Optional's request

13  and heard its additional, unchallenged evidence.

14  Based on the evidence presented to the Court at trial, pursuant

15  to Local Rule 52-1, the Court makes the following findings of fact and

16  conclusions of law in this matter.

17

18                              **FINDINGS OF FACT**

19  From July 30, 2001 through November 5, 2001, Christopher Kim,

20  Erica Kim, and Bora Lee ("the Kims") converted funds from Optional.

21  The approximate amount that the Kims converted from Optional was

22  37.1 billion Korean won.

23  Christopher Kim was the head of Optional, was on Optional's board

24  of directors, and ran Optional's day-to-day activities during the

25  period the Kims converted funds from Optional.

26  Claimant Erica Kim was a director of Optional and Claimant Bora

27  Lee was a manager during this same period.

28  The Kims also owned the majority of Optional's stock by causing

2

1  entities controlled by them to purchase Optional stock on the open
2  market; by causing three of their wholly-owned corporations to
3  purchase Optional stock from Kwangju Bank; and by using sham
4  corporations to purchase additional stock they caused Optional to
5  issue through a series of paid-in capital increases.

6      As a result of these stock purchases, the Kims gained control of
7  Optional by early-to-mid 2001.

8      In light of the foregoing, and based on their own admissions,
9  Christopher Kim and Erica Kim were fiduciaries of Optional during the
10 entire period the Kims converted funds from Optional.

11     The Kims worked together to convert Optional's funds.

12     The Kims' purchases of Optional's stock were part of the same
13 scheme by which the Kims converted Optional's funds.  This scheme was
14 complex, involving numerous international financial transactions among
15 numerous shell entities.  The complexity of the scheme appears to have
16 been aimed at thwarting detection or tracing.

17     Optional contends that the Kims used the proceeds of their
18 conversion to obtain the properties that are the subject of this
19 action.

20     Optional has asked the Court to impose a constructive trust in
21 its favor over these properties as a remedy for the Kims' conversion.

22     Because the Kims were fiduciaries of Optional, Optional's burden
23 to trace the funds the Kims converted from Optional to the subject
24 properties is minimal.

25     Having heard the evidence presented at trial, the Court finds
26 that Optional Capital, Inc., has sufficiently traced the proceeds and
27 product of the 37.1 billion Korean won converted from it during the
28 period of July 30, 2001 through November 5, 2001, to each of the

following properties:

    (1)   The real property located at 475 Martin Lane, Beverly Hills, CA; now a substituted res of $2,957,240.40 (plus interest), representing the proceeds from the sale of the property.;

    (2)   The real property located at 924 N. Beverly Drive, Beverly Hills, CA;

    (3)   $956,525.05 ("plus interest") seized from United Commercial Bank Account no. 63600084 in the name of First Stephora Avenue, Inc.;

    (4)   $157,329.05 (plus interest) seized from United Commercial Bank Account no. 6359914 in the name of Alexandria Investment, LLC;

    (5)   All funds in Credit Suisse Private Banking Account No. 0251-844548-6 in the name of Alexandria Investment, LLC when the government served its arrest warrant on or about August 8, 2005;

    (6)   A 2002 Porsche Boxster, vin WPOCA29852U624063, California license number 4YBK677, registered in the name of Erica Kim;

    (7)   A 1999 Ferrari 550 Maranello, vin ZFFZR49A4X0114823, California license number 4YBK677, registered in the name of Erica Kim;

    (8)   $34,000.00, ("plus interest") as a substitute res for the seized 2003 Landrover Range Rover;

    (9)   A 2002 Toyota Tacoma Pickup Truck, vin 5TEVL52N82Z050246, California license no. 6W11800, registered in the name of Erica Kim;

   (10)   A 1999 Porsche Carerra, vin WPOAA2993XS622539, registered in the name of Erica Kim;

4

1      (11) The items of Miscellaneous Furniture/Household items Beverly
2           Drive, 3410-05-F-107 listed as part of exhibit A to the
3           Government's forfeiture complaint in CV-05-03910;
4      (12) The items of Miscellaneous Furniture/Household items Martin
5           Lane, 3410-05-F-104 listed as part of exhibit A to the
6           Government's forfeiture complaint in CV-05-03910;
7      (13) The two chandeliers removed from the 475 Martin Lane
8           property.
9
10                          CONCLUSIONS OF LAW
11         Tracing is the identification of the wrongfully acquired property
12     into the hands of the defendant. Mitchell v. Dunn, 211 Cal. 129, 136
13     (1930).
14         To demonstrate that it is entitled to a constructive trust over
15     the properties as a remedy for the Kims' conversion of its assets,
16     Optional must trace the funds the Kims converted from it to the
17     properties. Ljepava v. M.L.S.C. Properties, Inc., 632 F.2d 815, 816
18     (9th Cir. 1980).
19         Because the Kims were fiduciaries of Optional during the period
20     in which they converted funds from Optional, Optional's tracing burden
21     is minimal. Tretheway v. Tretheway, 16 Cal.2d 133, 140 (1940) (proof
22     of fiduciary relationship, betrayal of the trust, probable amount of
23     the embezzlements presents a prima facie case); Mitchell, supra, 211
24     Cal. at 136 ("the degree of identification in an action between the
25     cestui and the trustee is far less than in a case where the trustee is
26     insolvent and the rights of creditors are involved. . . [I]n a contest
27     between the cestui and the administrator of a deceased defaulting
28     trustee, where the trustee had commingled trust and personal funds,

5

1  the cestui had a special lien on the entire estate of the deceased
2  solvent trustee, even though the trust funds could not be traced into
3  any definite property.  The court very carefully distinguished the
4  cases involving the rights of creditors, and held that a different
5  rule applied in such cases.") (internal citation omitted).

6       Thus, Optional's tracing burden is to establish: (1) the
7  fiduciary relationship between it and Christopher Kim or Erica Kim;
8  (2) the betrayal of trust; and (3) the probable amount of
9  embezzlements.  Tretheway, supra, 16 Cal.2d at 140 (upon showing son
10 had access to certain of mother's funds, they passed through his
11 hands, that no accurate or complete accounts were kept, burden upon
12 son).

13      Optional has satisfied this burden by showing (1) that
14 Christopher Kim and Erica Kim were its fiduciaries, (2) that
15 Christopher Kim and Erica Kim betrayed Optional's trust by converting
16 funds from Optional (as determined by the jury in Optional Capital,
17 Inc. v. Kyung Joon Kim, et al., CV 04-3866 ABC (PLAx)), and (3) the
18 amount Christopher Kim and Erica Kim converted (37.1 billion Korean
19 won, as found by the jury in CV 04-3866 ABC (PLAx)).

20      Because the Kims were fiduciaries of Optional, a constructive
21 trust extended to the money the Kims actually stole from Optional, and
22 to all property interests the Kims then held.  Mitchell, supra, 211
23 Cal. at 136-137 ("The law will not permit a trustee to say that the
24 only permanent investment made with moneys from the fund was with
25 personal funds, and that the dissipated funds belonged to the
26 cestui."); see also Keeney v. Bank of Italy, 33 Cal.App. 515, 517
27 (1917) ("where a trustee has mingled trust funds with his individual
28 moneys, drawing upon the aggregate from time to time, it will be

1 | conclusively presumed both against him and his creditors and persons
2 | claiming under him, that the residue thereof is attributable to the
3 | trust so far as may be necessary to keep the trust moneys intact"); In
4 | Re Goldberg, 168 B.R. 382, 385-86 (B.A.P. 9th Cir. 1994) (affirming
5 | bankruptcy court's determination that it cannot "accept Mr. Goldberg's
6 | claim that his residence was bought with personal funds while his
7 | personal expenses were paid with funds subject to [the] Bank's
8 | constructive trust," and thus affirming imposition of constructive
9 | trust over Goldberg's residence.).

10 | In addition, a constructive trust is a form of remedy that is
11 | "flexibly fashioned in equity to provide relief where a balancing of
12 | interests in the context of a particular case seems to call for it."
13 | F.T.C. v. Network Services Depot, Inc., 617 F.3d 1127, 1143 (9th Cir.
14 | 2010) (remedy of constructive trust was appropriate despite the fact
15 | that the res of that trust encompassed funds that had been commingled
16 | among several participants in the same unlawful enterprise).  Thus,
17 | for example, where businesses or persons are part of a common
18 | enterprise and are co-participants in unlawful practices, "the common
19 | revenue generated in the course of that scheme [is] the proper subject
20 | of the court's equitable powers" and it is appropriate to impose a
21 | constructive trust on all of that common revenue.  Id.

22 | Because the Kims were working in concert to convert funds from
23 | Optional, and because the conversion scheme involved the Kims'
24 | purchases of Optional's stock, the Court finds that it is appropriate
25 | to extend a constructive trust in Optional's favor to all of the
26 | revenue generated from the Kims' scheme as a whole, and to all of the
27 | assets purchased with those revenues.

28 | Thus, to the extent the Kims arguably obtained any portion of the

1  above properties with monies derived from proceeds of their sale of

2  stock purchased from Optional and not from funds converted from

3  Optional, it is still appropriate to extend a constructive trust over

4  those properties because all of the Kims' revenue-generating conduct

5  at Optional was part of the same complex scheme to convert Optional's

6  funds.

7      Based on the foregoing, the Court holds that a constructive trust

8  in Optional's favor extends to all of the above-listed properties.

9      In addition, upon the Kim Claimants' withdrawal of their claims

10  to the same properties, the Kim Claimants declined to further litigate

11  Optional's factual allegations, and those allegations are therefore

12  deemed admitted.  Thus, Optional has also established tracing by

13  default.

14      Similarly, Optional's claims to the properties are uncontested,

15  and therefore, as the only claimant to the above-referenced

16  properties, Optional is entitled to them by default.

17      .

18      **IT IS SO ORDERED.**

19  **DATED:     May 17, 2013**                        *Audrey B. Collins*

20

21                                        _____
                                          **AUDREY B. COLLINS**
22                                        **UNITED STATES DISTRICT JUDGE**

23

24

25

26

27

28

# EXHIBIT "2"

1   REHM & ROGARI
    Ralph Rogari (SBN 139422)
2   12121 Wilshire Blvd., Ste. 600
    Los Angeles, CA 90025
3   Tel: (310) 207–0059; Fax: (310) 207-2780

4   Mary Lee (SBN 177085)
    Law Offices of Mary Lee
5   3250 Wilshire Blvd. Suite 900
    Los Angeles, CA 90010
6   Tel:  (213) 383-9083; Fax: (213) 383-8339

7   Attorneys for
    *Claimant* OPTIONAL CAPITAL, INC.

8

9                **UNITED STATES DISTRICT COURT**

10         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12  UNITED STATES OF AMERICA      )   NO: CV 04-  2788 ABC (Plax)
                                   )   NO: CV 04 - 3386 ABC
13                                 )   NO: CV 05-  3910 ABC
                                   )   (Consolidated Cases)
14                                 )
            Plaintiff              )   [Proposed]
15  vs.                            )
                                   )   FINAL JUDGMENT
16  REAL PROPERTY  LOCATED AT      )   ON CLAIMS OF OPTIONAL
    475 MARTIN LANE, BEVERLY       )   CAPITAL, INC.
17  HILLS, CALIFORNIA              )
                                   )
18          Defendants.            )
                                   )
19  ─────────────────────────     )
                                   )
20  ALL RELATED ACTIONS            )
                                   )
21

22          **JUDGMENT BY THE COURT WITHOUT A JURY**

23

24      On April 30, 2013 through May 1, 2013, the claims of Claimant, Optional

25  Capital Inc., to properties in each of the above consolidated actions were tried by

26  the Honorable Audrey B. Collins, United States District Court Judge, without a

27  jury.

28      Optional Capital, Inc. claimed to be the owner of each of the following

Exhibit "2"

1  defendant properties:

2

3      Case number CV-04-2788

4      (1)   $2,957,240.40 (plus interest), representing the proceeds from the sale

5            of real property located at 475 Martin Lane, Beverly Hills, CA.;

6

7      Case number CV-04-3386

8      (2)   the real property located at 924 N. Beverly Drive, Beverly Hills, CA,

9            Los Angeles County Assessor's ID No. 4344-001-011, legal

10           description: Lot 11 in Block 77 of Beverly Hills, in the City of

11           Beverly Hills, County of Los Angeles, State of California, as per

12           map recorded in Book 11 pages 186 and 187 of maps, in the Office

13           of the County Recorder.;

14

15     Case number CV-05-3910

16     (3)   $956,525.05 ("plus interest") seized from United Commercial

17           Bank Account no. 63600084 in the name of First Stephora Avenue,

18           Inc.;

19     (4)   $157,329.05 (plus interest) seized from United Commercial Bank

20           Account no. 6359914 in the name of Alexandria Investment, LLC;

21     (5)   All funds in Credit Suisse Private Banking Account No. 0251-

22           844548-6 in the name of Alexandria Investment, LLC when the

23           Government served its warrant on or about August 8, 2005;

24     (6)   2002 Porsche Boxster, vin WPOCA29852U624063, California

25     license number 4YBK677, registered in the name of Erica Kim;

26     (7)   1999 Ferrari 550 Maranello, vin ZFFZR49A4X0114823, California

27           license number 4YBK677, registered in the name of Erica Kim;

28     (8)   $34,000.00, ("plus interest") as a substitute *res* for the seized 2003

-2-

1       Landrover Range Rover;

2    (9)   2002 Toyota Tacoma Pickup Truck, vin 5TEVL52N82Z050246,

3         California license no. 6W11800, registered in the name of Erica

4         Kim;

5    (10)  A 1999 Porsche Carerra, vin WPOAA2993XS622539, registered in

6         the name of Erica Kim;

7    (11)  The items of Miscellaneous Furniture/Household items seized from

8         924 N. Beverly Drive, as listed in exhibit A to the Government's

9         forfeiture complaint in United Stated District Court case CV-05-

10        03910, under number 3410-05-F-107.;

11    (12)  The items of Miscellaneous Furniture/Household items seized from

12        475 Martin Lane, as listed in exhibit A to the Government's

13        forfeiture complaint in CV-05-03910, under number 3410-05-F-104;

14    (13)  The two chandeliers removed from the 475 Martin Lane property;

15

16       With respect to the claims of Optional Capital, Inc., IT IS HEREBY

17 FOUND, ADJUDICATED and DECREED that Optional Capital, Inc. was and is,

18 the owner of each of the following defendant properties:

19

20     Case number CV-04-2788

21    (1)   $2,957,240.40 (plus interest), representing the proceeds from the sale

22         of real property located at 475 Martin Lane, Beverly Hills, CA.;

23

24     Case number CV-04-3386

25    (2)   the real property located at 924 N. Beverly Drive, Beverly Hills, CA,

26         Los Angeles County Assessor's ID No. 4344-001-011; legal

27         description: Lot 11 in Block 77 of Beverly Hills, in the City of

28         Beverly Hills, County of Los Angeles, State of California, as per

1    map recorded in Book 11 pages 186 and 187 of maps, in the Office

2    of the County Recorder;

3

4  Case number CV-05-3910

5    (3)   $956,525.05 ("plus interest") seized from United Commercial

6          Bank Account no. 63600084 in the name of First Stephora Avenue,

7          Inc.;

8    (4)   $157,329.05 (plus interest) seized from United Commercial Bank

9          Account no. 6359914 in the name of Alexandria Investment, LLC;

10   (5)   All funds in Credit Suisse Private Banking Account No. 0251-

11         844548-6 in the name of Alexandria Investment, LLC as of August

12         8, 2005;

13   (6)   2002 Porsche Boxster, vin WPOCA29852U624063, California

14         license number 4YBK677, registered in the name of Erica Kim;

15   (7)   1999 Ferrari 550 Maranello, vin ZFFZR49A4X0114823, California

16         license number 4YBK677, registered in the name of Erica Kim;

17   (8)   $34,000.00, ("plus interest") as a substitute *res* for the seized 2003

18         Landrover Range Rover;

19   (9)   2002 Toyota Tacoma Pickup Truck, vin 5TEVL52N82Z050246,

20         California license no. 6W11800, registered in the name of Erica

21         Kim;

22   (10)  A 1999 Porsche Carerra, vin WPOAA2993XS622539, registered in

23         the name of Erica Kim;

24   (11)  The items of Miscellaneous Furniture/Household items seized from

25         924 N. Beverly Drive, as listed in exhibit A to the Government's

26         forfeiture complaint in United Stated District Court case CV-05-

27         03910, under number 3410-05-F-107.;

28   (12)  The items of Miscellaneous Furniture/Household items seized from

-4-

1          475 Martin Lane, as listed in exhibit A to the Government's

2          forfeiture complaint in CV-05-03910, under number 3410-05-F-104;

3     (13)  The two chandeliers removed from the 475 Martin Lane property;

4

5       IT IS HEREBY FURTHER ORDERED that each of the above properties

6   shall be released forthwith to Optional Capital, Inc., through its counsel of record,

7   Ralph Rogari, and that all released currency shall include all accrued interest.

8

9       IT IS HEREBY FURTHER ORDERED that any check(s) for the return of

10   the defendant currency or accrued interest are to be made payable to Rehm &

11   Rogari client trust fund, 12121 Wilshire Blvd., Suite 600, Los Angeles, CA

12   90025.

13

14       IT IS FURTHER ORDERED that the Court hereby retains jurisdiction over

15   this action for the purpose of ensuring prompt and complete compliance with this

16   Judgment by the Clerk of Court, the United States Marshall Service and the

17   parties.

18                              *Audrey B. Collins*

19   Date: May 23, 2013

                            Honorable Audrey B. Collins

20                               United States District Court Judge

21

22

23

24

25

26

27

28

# EXHIBIT "3"

Case 2:04-cv-02788-ABC-PLA   Document 735   Filed 04/29/11   Page 5 of 51   Page ID #:8228

**D.    The Swiss Public Prosecutor Orders Disposition of Funds From the Swiss Accounts to DAS.**

On February 1, 2011, the Public Prosecutor for the Canton of Geneva issued an order[2] providing as follows:

- Because DAS withdrew its criminal complaint, the Public Prosecutor would not investigate the facts contained in DAS's criminal complaint any further;

- the Public Prosecutor lifted the seizure of the assets contained in the Swiss Accounts;

- upon lifting of the seizure, the Public Prosecutor ordered Credit Suisse to make a transfer of 14 billion Korean Won from one of the Swiss Accounts to DAS; and

- the Public Prosecutor ordered that DAS and Alexandria pay for certain costs of the Swiss investigation.

Pursuant to the Public Prosecutor's order, Credit Suisse effected a transfer of 14 billion Korean Won to DAS on or about February 2, 2011. This matched the precise amount of the Kim Claimants' funds over which DAS asserted an interest, as stated both in DAS's Verified Claim and Statement of Interest in the Forfeiture Actions (No. CV 05-3910-ABC, Docket. No. 44, at ¶ 8) and its Complaint in the Los Angeles Superior Court action. (Complaint dated May 30, 2003 in *DAS Corporation v. Kyung Joon Kim et al.*, LASC No. BC296604, at ¶ 9 and pp. 18-21.)[3] Having received the 14 billion Korean Won, DAS dismissed its complaint in the Los Angeles Superior Court and withdrew its claims in the instant forfeiture actions.

---

[2]   The Order of the Swiss Public Prosecutor, along with an English translation thereof, is attached hereto as Exhibit B.

[3]   DAS's Complaint in the Los Angeles Superior Court litigation is attached hereto as Exhibit C.

PSM
PARKER
SHUMAKER
MILLS LLP

Exhibit 2

# EXHIBIT "4"

# Appellate Courts Case Information

## 2nd Appellate District

Change court ▼

*Court data last updated: 07/23/2018 11:19 AM*

## Docket (Register of Actions)

**Optional Capital, Inc. et al. v. DAS Corporation**
**Division 1**
**Case Number B241244**

| Date | Description | Notes |
|------|-------------|-------|
| 05/17/2012 | Notice of appeal lodged/received. | noa 5/14/12 Optional Capital, Inc., Ralph Rogari and Mary Lee |
| 05/18/2012 | Filing fee. | check # 3558 |
| 06/06/2012 | Default letter sent; no case information statement filed. | |
| 06/11/2012 | Mail returned and re-sent. | Ralph Thomas Rogari |
| 06/11/2012 | Notice of appeal lodged/received. | noa 6/8/12 Optional Capital, Inc., Ralph Rogari and Mary Lee - appealing 5/21/12, 6/4/12, 6/5/12 orders |
| 06/12/2012 | Filing fee. | check # 1755 NOA 6/8/12 Optional Capital Inc. et al. |
| 06/15/2012 | Mail returned and re-sent. | Ralph Rogari (Aplt counsel) |
| 06/20/2012 | Civil case information statement filed. | noa 6/8/12 Optional Capital, Inc., |
| 06/20/2012 | Civil case information statement filed. | noa 5/14/12 Optional Capital, Inc., |
| 09/21/2012 | Record on appeal filed. | 1-Reporter's (71 pgs) |
| 10/22/2012 | Requested - extension of time | |
| 10/23/2012 | Granted - extension of time. | |
| 12/19/2012 | Requested - extension of time | |

*Exhibit "4"*

| | | |
|---|---|---|
| 12/26/2012 | Granted - extension of time. | ext to 1/25/13 for AOB |
| 02/01/2013 | Appellant notified re failure to timely file opening brief. | |
| 02/19/2013 | Appellant's appendix filed. | 14 vols |
| 02/19/2013 | Appellant's opening brief. | Plaintiff and Appellant: Optional Capital, Inc.<br>Attorney: Ralph Rogari<br>Plaintiff and Appellant: Ralph Rogari<br>Plaintiff and Appellant: Mary Lee |
| 03/11/2013 | Granted - extension of time. | Respondent's brief. Due on 04/22/2013  By 32 Day(s)<br><br>ext to 4/22/2013 for RB (DAS Corporation) |
| 03/11/2013 | Default notice for responsive filing fee sent to: | respondent DAS Corporation |
| 03/13/2013 | Filing fee. | respondent, DAS Corporation |
| 03/15/2013 | Granted - extension of time. | ext to 4/22/2013 for RB (Eric Honig) |
| 03/15/2013 | Default notice for responsive filing fee sent to: | respondent Eric Honig |
| 03/19/2013 | Filing fee. | respondent Eric Honig |
| 03/19/2013 | Requested - extension of time | |
| 03/20/2013 | Granted - extension of time. | ext to 4/22/13 for RB (Bora Lee) |
| 03/21/2013 | Granted - extension of time. | ext to 4/22/13 for RB (Kim) |
| 04/17/2013 | Granted - extension of time. | Respondent's brief. Due on 05/22/2013  By 30 Day(s)<br><br>(DAS Corp) |
| 04/18/2013 | Granted - extension of time. | |
| 04/19/2013 | Granted - extension of time. | (Bora Lee) |

| 04/19/2013 | Granted - extension of time. | (Erica Kim) |
| 05/09/2013 | Request for dismissal filed. | atty Ralph Rogari for aplts.; Request for Dismissal of Partial Appeals as to Respondents Eric Honig, Erica Kim and Bora Lee |
| 05/09/2013 | Dismissal order filed. | Pursuant to appellants' request, the appeal filed 5/14/2012 is dismissed as to respondents Eric Honig, Erica Kim and Bora Lee. The clerk is directed to issue remittitur forthwith. |
| 05/09/2013 | Remittitur issued. | noa filed 5/14/2012 is dismissed as to respondents Eric Honig, Erica Kim and Bora Lee. |
| 05/22/2013 | Respondent's brief. | Defendant and Respondent: DAS Corporation<br>Attorney: Gregory Michael Lee |
| 06/10/2013 | Granted - extension of time. | Appellant's reply brief. Due on 07/01/2013  By 20 Day(s) |
| 07/03/2013 | Request for judicial notice filed. | filed by aplt. (Documents attached with motion) |
| 07/03/2013 | Appellant's reply brief. | Plaintiff and Appellant: Optional Capital, Inc.<br>Attorney: Ralph Rogari<br>Plaintiff and Appellant: Ralph Rogari<br>Attorney: Ralph Rogari<br>Plaintiff and Appellant: Mary Lee<br>Attorney: Ralph Rogari Rule 8.25 |
| 07/08/2013 | Case fully briefed. | |
| 07/18/2013 | Opposition filed. | Respondent Das Corporation's Opposition to Appellants' Request for Judicial Notice |
| 07/18/2013 | Request for judicial notice filed. | by atty Gregory M. Lee for respondent Das Corporation; document attached |
| 07/18/2013 | Motion filed. | Motion to Strike or Disregard Appellants' New Argument on Reply; Application for Permission to File Supplemental Brief by DAS Corporation, filed by atty Gregory M. Lee |
| 07/26/2013 | Opposition filed. | by appellants to motion to strike & request for sanctions against DAS & its counsel |
| 07/26/2013 | Opposition filed. | by appellants to request for judicial notice |
| 07/26/2013 | Reply filed to: | by aplt Optional Capital to opposition re judicial notice |
| 07/29/2013 | Filed proof of service. | Appellant's Amended Proof Of Service re: Oppositions filed 7/26/2013 |
| 08/07/2013 | Reply filed to: | (by DAS Corp) re motion to strike |
| 11/22/2013 | Calendar notice sent. Calendar date: | December 17, 2013 @ 9:00 a.m. |
| 12/10/2013 | Order filed. | Respondent DAS Corporation's motion to strike those portions of appellants' reply brief that contain a new argument based on events occuring after the filing of the appellants' opening brief is granted, and appellants' request for judicial notice in support of such new argument is denied. DAS Corporation's request for permission to file supplemental brief to address arguments raised for the first time in appellants' reply brief is denied. |
| 12/17/2013 | Cause argued and submitted. | |
| 01/15/2014 | Opinion filed. | (Signed Published) Appellants are to recover their costs on appeal.<br>Request for judicial notice granted on pg 5. |
| 03/21/2014 | Remittitur issued. | |

| | | |
|---|---|---|
| 03/21/2014 | Case complete. | |
| 04/07/2014 | Mail returned, unable to forward. | cc of rmi to respondent Erica Kim |
| 02/08/2017 | Record in Box # | 459622520 - 521 |

**Click here** to request automatic e-mail notifications about this case.

Careers | Contact Us | Accessibility | Public Access to Records | Terms of Use |    © 2018 Judicial Council of California
Privacy

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.   Introduction and Background

The proceedings leading to the May 23. 2013 *in rem* Final Judgment were long and convoluted, with many trips to the Ninth Circuit Court of Appeal.  This application is only a procedural request; Optional simply seeks to initiate a contempt proceeding against former claimant DAS.  The procedure by which a contempt proceeding is initiated is the court's issuance of an order to show cause. (*See e.g. Alcade v. NAC Real Estate Invs. & Assignments, Inc.,* 580 F. Supp. 2d 969, 971 (CD. Cal. 2008)

As set forth in the Rogari declaration,  a contempt proceeding is necessary and appropriate to enforce DAS's compliance with this Court's decree that the funds in Credit Suisse account 0251-844548-6 as of August 8, 2005, are owned by Optional and are to be released and returned to Optional. [CV-04-2788, dk no. 1187; CV-05-3910, dk no. 240 pg. 4, lines 10-12.]

### 2.   A civil contempt proceeding is both available and necessary to enforce the Judgment decreeing Optional the owner of the Swiss funds and entitled to their return.

The law requires all judgments be complied with promptly.   In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987).   Disobedience to a decree by failing to take all reasonable steps within the person's power to comply constitutes civil contempt.   In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir.1993).   There is no "good faith" exception to the requirement of compliance with a federal court decree.   In re Crystal Palace Gambling Hall, supra, 817 F. 2d at p. 1365.

DAS has admitted taking possession of 14 billion won of the funds that were in the Swiss account as of August 8, 2005.  (Rogari Dec. para.  6.)  DAS has knowledge of the Judgment which adjudicated those funds to belong to Optional and which directed the funds be returned to Optional.

1

1    (Rogari Dec. paras. 8, 9.)    Despite repeated demands, DAS has refused to release and return those

2    funds to Optional.    (Rogari Dec. para. 10.)

3          Although the Swiss funds themselves are a party to this litigation, DAS is not.  That DAS is

4    not currently a party to this proceeding does not mean it can ignore and refuse to comply with the

5    final judgment of this court.  It is well established that  a district court's inherent power to enforce its

6    decrees by civil contempt extends to non-parties. See Chambers v. NASCO, Inc., 501 U.S. 32, 43

7    (1991); Inst. of Cetacean Research v. Sea Shephard Cons. Society, 774 F.3d 935, 944 (9th Cir.

8    2014).  A non-party may be held in contempt where, as here, it has notice of the court order and

9    either aids or abets the defendant in violating it or is legally identified with the defendant. See

10    Peterson v. Highland Music, Inc., 140 F. 3d 1313, 1323 (9th Cir. 1988); Inst. of Cetacean Research,

11    supra, 774 F.3d at, 944.  DAS, having taken possession and control of the funds, is both legally

12    identified with the funds and directly responsible for the defendant funds not being released and

13    returned to Optional as the Judgment requires -- the Swiss funds cannot voluntarily return

14    themselves to Optional.    Contempt proceedings are therefore available and DAS should be brought

15    before the Court to answer for its refusal to comply with the Judgment and return the funds to

16    Optional.

17          In addition to the Court's inherent authority to enforce its judgments, Federal Rule of Civil

18    Procedure 71 provides that "when obedience to an order may be lawfully enforced against a person

19    who is not a party, that person is liable to the same process for enforcing obedience to the order as if

20    a party."   Rule 71 "was intended to assure that process be made available to enforce court orders in

21    favor of and against persons who are properly affected by them, even if they are not parties to the

22    action." Peterson v. Highland Music, Inc., supra, 140 F. 3d at 1323.  Further, in directing the

23    release and return of the Swiss funds to Optional, the Final Judgment required the performance of a

24

25

2

1   specific act.  Thus, Federal Rule of Civil Procedure 70 applies, and Rule 70 (e) specifically allows

2   the court to compel the performance of the return of the Swiss funds to Optional by civil contempt.

3          Finally, there can be no doubt the Judgment binds DAS.  As the Ninth Circuit previously

4   held in this very case, "*[in] rem* actions are generally considered proceedings 'against all the world.'

5   Restatement (Second) of Judgments § 6 cmt. a (1980) (internal quotation marks omitted).   In this

6   type of proceeding, the court undertakes to determine all claims that anyone has to a thing in

7   question." US v. Real Property Located at 475 Martin Lane, 545 F. 3d 1134, 1144.; *see also* United

8   States v. Ursery, 518 U.S. 267, 295-96 (1996) (Kennedy, J. concurring) (proceedings *in rem* are

9   simply structures that allow title to property to be quieted in a single proceeding in which all

10  interested persons are required to file claims at one time).  It does not matter that DAS, which in fact

11  filed a claim in these proceedings, subsequently abandoned it:

12              By giving the notice prescribed by the statute, the entire world is called
                before the court, and the court acquires jurisdiction over all persons for the
13              purpose of determining their rights to any portion of the estate, and every
                person who may assert any right or interest therein is required to present his
14              claim to the court for its determination.  Whether he appears and present his
                claim, or fails to appear, the action of the court is equally conclusive upon
15              him "subject only to being reversed, set aside, or modified on appeal."  The
                decree is as binding on him if he fails to appear and present his claim, as if
16              his claim, after presentation, had been disallowed by the court.

17  (*Estate of Radovich,*(1957)  48 Cal.2d 116, 121; see also *Lee v. Silva* (1925) 197 Cal. 364)

18         In the Ninth Circuit, a civil contempt proceeding is a trial within the meaning of

19  Fed.R.Civ.P. 43(a), and not a hearing on a motion within the meaning of Fed.R.Civ.P. 43(e.).

20  Pennwalt Corp. v. Durland-Wayland, Inc., 708 F.2d 492, 495 (9th Cir. 1983) (quoting Hoffman Beer

21  Drivers & Salesman's Local Union No. 888, 536 F.2d 1268, 1277 (9th Cir. 1976).  Contempt

22  proceedings are initiated by the court issuing an Order to Show Cause as to why a contemnor should

23  not be held in contempt, as well as a notice of a date for the hearing.  See e.g. Alcade v. NAC Real

24  Estate Invs. & Assignments, Inc., 580 F. Supp. 2d 969, 971 (CD. Cal. 2008); Peterson v. Highland

25

1 | Music, Inc., supra 140 F. 3d 1313 [district court initiated contempt proceedings against two non-

2 | parties by issuing an order to show cause.]; Federal Trade Commission v. Rincon Management

3 | Services LLC., No. EDCV 11-01623 VAP (SPx), dk    [minute order directing non-parties to show

4 | cause why they should not be held in contempt.]; Rodriguez v. County of Stanislaus, 2010 WL

5 | 3733843, at *5-6 (E.D. Cal. Sept. 16, 2010) (proper procedure is issuing the order to show cause).

6 | By this application Optional requests the Court issue the proposed Order to Show Cause and notice a

7 | date for the hearing.

8 | The attached declaration of Ralph Rogari sets forth a prima facie case of DAS's disobedience

9 | to this court's judgment.    Since it may be necessary to serve DAS through the Hague convention,

10 | Optional respectfully requests the hearing be scheduled for November 2018, as convenient to the

11 | court's calendar.

12 | Dated: July 20, 2018                                 ROGARI LAW FIRM & MARY LEE

13 |

14 | By: _____

15 | Ralph Rogari, attorney for claimant Optional Capital, Inc.

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

4

Claimant Optional Capital, Inc.'s Motion for Order to Show Cause