Ralph Rogari (SBN 139422)
Rogari Law Firm
12400 Wilshire Blvd., Ste. 400
Los Angeles, CA 90025
Tel: (310) 207–0059
roglaws@yahoo.com

Mary Lee (SBN 177085)
3250 Wilshire Blvd. Suite 1750
Los Angeles, CA 90010
Tel:  (213) 447-1902
leemarylaw@aol.com

Attorneys for *Claimant* Optional Capital, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REAL PROPERTY  LOCATED AT 475 MARTIN LANE, BEVERLY HILLS, CALIFORNIA,<br><br>Defendant.<br>_____<br><br>AND RELATED CONSOLIDATED CASES<br>_____ | NO: CV 04-  2788 ABC (Plax)<br>NO: CV 04 - 3386 ABC<br>NO: CV 05-  3910 ABC<br><br>(Consolidated Cases)<br><br>OPTIONAL'S REPLY TO DAS CORPORATION'S RESPONSE TO ORDER TO SHOW CAUSE; SUPPLEMENTAL DECLARATION OF RALPH ROGARI<br><br>[Objections to Request for Judicial Notice filed concurrently]<br><br><u>Hearing:</u><br><br>Date:       January 14, 2019<br>Time:       8:30 a.m.<br>Judge:      Hon. Virginia A. Phillips<br>Location:  Courtroom 8A |

**OPTIONAL'S REPLY** TO DAS CORPORATION'S RESPONSE TO ORDER TO SHOW CAUSE

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................. ii

Optional's Reply Argument........................................................................ 1

1. DAS presented no evidence it complied with the Judgment, and no evidence it cannot comply. ............................................. 1

2. This Court has authority to order DAS to comply with the Judgment, even if DAS is not a party.......................................... 3

3. The Judgment is clear and unambiguous in its command that the funds be released to Optional. DAS cannot collaterally attack the Judgment in this proceeding........................................ 5

    A. The Judgment is not ambiguous. .................................... 5

    B. That the Judgment states Optional is the owner of "All Funds" in the Credit Suisse account as of August 8, 2005, does not render the Judgment ambiguous. ................................................................... 7

    C. The "Act of State Doctrine" is irrelevant. Also, no "foreign government" has control of the funds, DAS does. .......................................................................... 8

4. The Court should require DAS to release the funds within seven days and should impose a daily fine of $5,000.00 if it does not. Optional should also be awarded its costs and attorneys fees in bringing this matter................................. 9

5. Conclusion ................................................................................. 10

Declaration of Ralph Rogari ................................................................. 12

# TABLE OF AUTHORITIES

Page

**Cases**

Balla v. Idaho State Bd. of Corrections
869 F.2d 461 (9th Cir. 1989) .................................................................. 5

Hoffman Beer Drivers & Salesman's Local Union No. 888
536 F.2d 1268 (9th Cir. 1976) ................................................................ 1

In re Crystal Palace Gambling Hall, Inc.
817 F.2d 1361 (9th Cir. 1987) ................................................................ 2

In re Debs
158 U.S. 564 (1895) abrogated on other grounds
by Bloom v. Illinois, 391 U.S. 194 (1968) .............................................. 5

In re Dual-Deck Video Cassette Recorder
Anti-Trust Litigation, 10 F.3d 693 (9th Cir. 1993) .............................. 2, 6

Institute of Cetacean Res. v. Sea Shepherd Cons. Soc.
774 F.3d 935 (9th Cir. 2014) ............................................................. 1, 6

McComb v. Jacksonville Paper Co.
336 U.S. 187 (1949) .............................................................................. 6

Maggio v. Zeitz
333 U.S. 56 (1948) ........................................................................ 5, 7, 8

Mattel, Inc. v. MGA Entertainment, Inc.
616 F.3d 904 (9th Cir. 2010) ................................................................. 4

NLRB v. Trans Ocean Export Packing, Inc.
473 F.2d 612 (9th Cir. 1973) ................................................................. 2

Pennwalt Corp v. Durland-Wayland, Inc.
708 F.2d 492 (9th Cir. 1983) ................................................................. 1

Perry v. O'Donnell
759 F.2d 702 (9th Cir. 1985) ................................................................. 2

Shuffler v. Heritage Bank
720 F.2d 1141 (9th Cir. 1983) ........................................................... 9, 10

Stone v. City and County of San Francisco
968 F.2d 850 ......................................................................................... 4

Swann v. Charlotte-Mecklenburg Bd. of Educ.
402 U.S. 1 (1971) .................................................................................. 4

U.S. v. Hall
472 F.2d 261 (5th Cir. 1972) ................................................................. 3

U.S. v. Paccione
    964 F.2d 1269 (2d Cir. 1992) .................................................. 3

U.S. v. Real Property Located at 475 Martin Lane
    545 F.3d 1134 (9th Cir. 2008) ................................................. 4

U.S. v. United Mine Workers of America
    330 U.S. 258 (1947) .............................................................. 10

U.S. v. Ursery
    518 U.S. 267 (1996) .............................................................. 4

Whittaker Corp. v. Execuair Corp.
    953 F.2d 510 (9th Cir. 1992) ................................................... 10

**Statutes and Rules**

FRCP Rule 70 ............................................................................... 3

FRCP Rule 71 ............................................................................... 3

18 U.S.C. § 2232 (b) .................................................................... 7

Local Rule 7-8 ............................................................................. 1

**OPTIONAL'S REPLY MEMORANDUM**

In response to the Order to Show Cause, DAS has not submitted a single declaration disputing Optional's evidentiary showing that DAS has disobeyed the Court's Judgment. DAS concedes it has possession of funds subject to the Judgment, had notice of the Judgment, has refused to release the funds subject to the Judgment as required, and makes no claim it lacked or lacks the ability to comply.

Looking to create burden, DAS's lawyers submit a 25-page brief and 1000-plus pages of documents which have nothing to do with the issues before the court. Having dismissed their claims years before the Judgment was entered, DAS's current lawyers now try to collaterally attack the Judgment, undermine decisions of the Ninth Circuit, and make claims directly contrary to those they made to the district court when they took the funds. They also resort to personal attacks on Optional's counsel. This most recent "experiment with disobedience" must be rejected. Institute of Cetacean Research v. Sea Shepherd Conservation Society, 774 F.3d 935, 954 (9th Cir. 2014).

Still refusing to comply with the Judgment, DAS should be held in contempt. It should also be ordered to pay a $5,000 daily fine until it does comply. Optional should also be awarded its attorneys fees and costs in bringing this application.

**1.   DAS presented no evidence it complied with the Judgment and no evidence it cannot comply.**

This civil contempt proceeding is an evidentiary one where a narrow issue of fact, DAS' compliance with this Court's May 23, 2013, final *in rem* Judgment, is determined. Local Rule 7-8; Pennwalt Corp. v. Durland-Wayland, Inc., 708 F.2d 492, 495 (9th Cir. 1983), citing Hoffman Beer Drivers & Salesman's Local Union No. 888, 536 F.2d 1268, 1277 (9th Cir. 1976). The parties agree Optional

bears the burden to establish by clear and convincing evidence that DAS failed to comply with this court's judgment. In re Crystal Palace Gambling Hall, Inc., 817 F. 2d 1361, 1365 (9th Cir. 1987); Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir.1985).  On its part, DAS has the burden to prove it has an inability to comply, but DAS had not made any such claim, nor has it presented evidence showing "categorically and in detail" why it cannot comply. *See* NLRB v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 616 (9th Cir. 1973).

As set forth in the Court's Order to Show Cause ruling, Optional has presented prima facie evidence that DAS took possession of $12,460,000 [1] from the Credit Suisse account 0251-844548-6 on February 2, 2011; the Judgment ordered those funds released to Optional; DAS had notice of this Court's Judgment; and DAS has refused to release the funds. In response to the Order to Show Cause, DAS does not deny it took possession of the $12,460,000 from the Credit Suisse account 0251-8444548-6 on February 2, 2011; does not deny that, no later than July 3, 2013, it received a copy of this court's May 23, 2013 Judgment and its May 17, 2013, Findings of Fact and Conclusions of Law; and does not deny it has steadfastly refused to release the $12,460,000 to Optional. Optional has established its case. At the same time, DAS does not offer a shred of evidence that it lacks the ability to comply with the Judgment.

Having conceded all the material elements of contempt, DAS should be found in contempt. In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir.1993) (civil contempt is shown by disobedience to a judgment and/or failure to take all reasonable steps within the person's power to comply with that judgment.)

---

[1] The won to dollar conversion rate changes daily. The rate as of 12/14/18 was .00089 won = 1 dollar. As of 12-14-2018, 14 billion won equals $12,460,000.00.

**OPTIONAL'S REPLY** TO DAS CORPORATION'S RESPONSE TO ORDER TO SHOW CAUSE
-2-

## 2. This Court has authority to order DAS to comply with the Judgment, even if it is not a party.

DAS argues that since it was not a party to the case at the time of the judgment, it cannot be forced to comply with the Judgment under Rule 70, because that rule provides that "if a judgment requires a party to perform any other specific act, and the party fails to comply, the court may order the act to be done." However, Rule 71 says that, "when an order may be enforced against a non–party, the procedure for enforcing the order is the same as for a party." Since a party can be ordered to perform the act, so too can a former party to the action like DAS.

DAS goes on to argue it is "nonsensical," and it could find no cases to support a conclusion, that a non-party can be forced to return property it holds in a foreign jurisdiction. Really? DAS must not read the cases it cites in its brief. For as those authorities hold, the court can enforce its in rem judgment against any person, even a non-party such as DAS, who comes into contact with property which is the subject of a judicial decree. United States v. Hall 472 F.2d 261, 265-66 (5th Cir. 1992) (cited in DAS brief at pg. 20.) More specifically, because "*in rem* orders [are] particularly vulnerable to disruption by an undefinable class of persons who are neither parties nor acting at the instigation of parties . . . courts must have the power to issue orders . . . tailored to the exigencies of the situation and directed to protecting the court's judgment." Id. at 266; accord United States v. Paccione, 964 F.2d 1269, 1275 (2d Cir.1992) (orders issued "to preserve property for forfeiture following a RICO conviction ... closely resemble remedies such as garnishment or attachment, which may be directed routinely at third-parties, who have no interest in the merits of the underlying litigation.")

This was an *in rem* proceeding whose **very purpose** was to determine who owned the Swiss funds. As the Ninth Circuit held in this very case in 2008:

**OPTIONAL'S REPLY** TO DAS CORPORATION'S RESPONSE TO ORDER TO SHOW CAUSE
-3-

> *In rem* actions are generally considered proceedings "against all the world." Restatement (Second) of Judgments § 6 cmt. a (1980) (internal quotation marks omitted). "In this type of proceeding, the court undertakes to determine all claims that anyone has to a thing in question."

US v. Real Property Located at 475 Martin Lane, Beverly Hills, California 545 F. 3d 1134, 1144-1146 (9th Cir. 2008); see also United States v. Ursery, 518 U.S. 267, 295-96 (1996) (Kennedy, J. concurring) (proceedings *in rem* are simply structures that allow title to property to be quieted in a single proceeding in which all interested persons are required to file claims at one time).

At the same time, it is well established that a federal court has broad equitable remedial powers to implement Optional's constructive trust in the Swiss funds. Stone v. City and County of San Francisco, 968 F. 2d 850, 861 (9th Cir. 1992), citing Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1971). Indeed, a constructive trust is an equitable remedy that itself compels the transfer of wrongfully held property to its rightful owner. Mattel, Inc. v. MGA Entertainment, Inc., 616 F. 3d 904, 909 (9th Cir. 2010).

In short, although DAS attempts to do so, the power of this Court to enforce its orders through contempt cannot be questioned:

> [T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the [ordering] court. ... To submit the question of disobedience to another tribunal ... would operate to deprive the proceeding of half its efficiency. ... [T]he sole adjudication of contempts, and the punishments thereof [belong] exclusively ... to each

respective court.

In re Debs, 158 U.S. 564, 594-95, 15 S.Ct. 900, 910, 39 L.Ed. 1092 (1895) (internal citations and quotation marks omitted), abrogated on other grounds by Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

DAS, as a party in possession of funds this Court determined were owned by Optional, is subject to the court's power to enforce its Judgment through contempt.

**3. The Judgment is clear and unambiguous in its command that the funds be released to Optional. DAS cannot collaterally attack the Judgment in this proceeding.**

It is well settled that "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." Maggio v. Zeitz, 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948); Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 465 (9th Cir. 1989).

Yet that is precisely what DAS asks the Court to do here. It wants to re-litigate the facts and law underlying the Judgment under the guise the Judgment itself is ambiguous. Its attempt to relitigate is not even based on evidence, but on self-serving and inaccurate characterizations of hearsay from interlocutory orders that were entered long before the trial and Judgment was entered. The arguments are meritless.

**A. The Judgment is not ambiguous.**

The Judgment unambiguously states that Optional is the owner of "All funds in Credit Suisse Private Banking Account No. 0251-844548-6 in the name of Alexandria Investment, LLC as of August 8, 2005" and then directs that all of the properties the court finds Optional to be the owner of, including the Swiss funds, are to be released to Optional: "IT IS HEREBY FURTHER ORDERED

1  that each of the above properties shall be released forthwith to Optional Capital,
2  Inc., through its counsel of record, Ralph Rogari; and that all released currency
3  shall include all accrued interest." [Rogari dec., Exhibit 2, pg. **.]   This Court
4  stated in its Order to Show Cause that "the judgment directed that the subject
5  funds and properties were to be released to Optional and the Court retained
6  Jurisdiction to ensure compliance," and without question, that is what the
7  Judgment directed.

8      Indeed, DAS was not the only person or entity who held property subject
9  to the Judgment.   The United States Government, the Clerk of the Court, and
10 Erica Kim also held properties which were the subject of the Final Judgment, yet
11 none of them had any difficulty in understanding and complying with their
12 obligation to release or return the properties in their possession to Optional.
13 Only DAS has failed to comply.

14     Moreover, the law does not allow DAS to ignore the Judgment for years
15 and then, when cited into court for a contempt hearing, have its lawyers argue the
16 Judgment was ambiguous.  If DAS truly believed the Judgment was ambiguous,
17 it was required to take steps to have that ambiguity resolved.  <u>Institute of
18 Catacean Research v. Sea Shepherd</u>, <u>supra</u>, 774 F.3d at p. 954.   Though DAS has
19 had the opportunity for years, it made no attempt whatsoever to seek clarification
20 of its obligations.   Instead, it  "acted at its peril" when it undertook to make its
21 own self-serving determination of what the Judgment meant.  <u>McComb v.
22 Jacksonville Paper Co.</u>, 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

23     Civil contempt is shown by a failure to take all reasonable steps within a
24 person's power to comply with the Judgment.  <u>In re Dual-Deck Video Cassette
25 Recorder Antitrust Litig.</u>, <u>supra</u>, 10 F.3d at p. 695.   By waiting until now to
26 claim the Judgment was ambiguous, DAS clearly did not take all reasonable steps
27 to comply with it.

28

**B.     That the Judgment states Optional is the owner of "All Funds" in the Credit Suisse account as of August 8, 2005, does not render the Judgment ambiguous.**

DAS's new lawyers have also decided to assert the exact opposite of what DAS argued to the district court in 2011 to avoid a contempt finding.  Now, contrary to what DAS represented to the court in 2011, DAS argues that the transfer of the Swiss funds to DAS on February 2, 2011, deprived the district court of jurisdiction to determine ownership of the transferred funds and that, despite the clear language of the Judgment, it should be interpreted to exclude the funds DAS received from the Kims in 2011.

This is another improper attack on the Judgment.  If DAS wanted to challenge the jurisdiction of the district court to impose a constructive trust on the funds it received from the Kims, DAS should have litigated that question to a final judgment before dismissing its claims.   Maggio v. Zeitz, supra, 333 U.S. at p. 69.   As to the issue before this Court in 2018, there is no ambiguity in the Judgment that requires interpretation.   The Judgment is clear on its face.

Indeed, if DAS had successfully litigated its current position to a final judgment, there would likely have been a criminal proceeding, for DAS and the Kims would have committed a felony violation of 18 U.S.C. § 2232 (b).

Lastly, DAS also makes a convoluted argument about the law of constructive trusts and what the district court could purportedly do or not do at the trial of the case.   [DAS brief pages 15-18]   Again, regardless of DAS's view of the law of constructive trusts, the legal and factual issues underlying the judgment are not before the court.

The bottom line is this.   No matter how many different ways DAS tries to attack the Judgment, it is not ambiguous.   DAS obviously does not like the judgment and wishes the court would have reached different conclusions, but that

is water under the bridge.  DAS should be found in contempt for its failure to comply with the Judgment directing it to release Optional's funds to it.

### C. The "Act of State Doctrine" is irrelevant.   Also, no "foreign government" has control of the funds, DAS does.  These issues have nothing to do with whether DAS complied with the Judgment.

Finally, DAS spends much of its brief, and provides many pages of documents, arguing about the "Act of State Doctrine."   Once again, regardless whether DAS could have relied upon the doctrine had it litigated the merits of this case in 2013, it is not an issue in this proceeding.   As an attack on the legal and factual underpinnings that support the judgment, the argument is barred.  "A contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy."  Maggio v. Zeitz, supra,  333 U.S. at p. 69, 68 S.Ct. at p. 408.

Even if the issue was before the court - and it is not - DAS's attorneys grossly mis-characterize what took place in Switzerland.   There was no adjudication of anything, nor was DAS "awarded" anything.   All that happened was that the Kims and DAS entered into a written agreement divvying up the funds in the Swiss account, and then went to Switzerland to have it effectuated. Pursuant to their agreement, they proceeded to ask the Swiss prosecutor to drop the criminal prosecution DAS had instigated and release a local freeze that had been placed on the account while the criminal prosecution was pending, so that the funds could be divided up as the parties had agreed, and the prosecutor then did as they wished.   The prosecutor did not adjudicate ownership, nor did it award anything to anybody.   Optional's counsel has a copy of the DAS-Kims agreement, and will provide it to the court, should it so desire. Of course, neither

DAS nor the Kims informed the prosecutor that the funds they agreed to divide between themselves was impressed with a constructive trust in favor of Optional.

At the end of the day, this proceeding has nothing to do with the Swiss prosecutor's decision to drop her investigation and release the temporary freeze that went with it. Optional is simply asking the Court to enforce its Judgment.

Lastly, DAS's argument regarding the court's "control" of the Swiss funds when the transfer occurred is difficult to understand. DAS makes reference to the well-recognized distinction between jurisdiction over property and control of property. It then cites various cases acknowledging that it can be difficult to enforce an <u>in rem</u> judgment on property when a foreign country has control over it. But no country has "control" over the funds, DAS does. DAS is a private party. So while DAS may hold the funds in Korea, DAS is not the Republic of Korea.

Optional has served DAS with process and it has appeared. Since it is clear DAS did not comply with the Judgment, Optional respectfully requests the court issue a contempt sanction to coerce DAS to comply with the Judgment.

**4. The Court should require DAS to release the funds within 7 days and should impose a daily fine of $5,000.00 until it does so. Optional should also be awarded its costs and attorneys fees in bringing this matter.**

Sanctions for civil contempt can be imposed for one or both of two distinct purposes: (1) to compel or coerce obedience to a court order; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance. <u>Shuffler v. Heritage Bank,</u> 720 F. 2d 1141, 1147 (9th Cir. 1983). Here, Optional seeks both a coercive fine to compel obedience to the court judgment and a compensatory award to compensate Optional for the cost of bringing this proceeding.

In determining the amount and duration of a coercive fine, the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." United States v. United Mine Workers of America, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 516 (9th Cir. 1992).

Here, the amount that DAS has refused to return to Optional is substantial, $12,460,000.00.  At the same time, according to the attached financial statement of DAS, it has substantial assets.  As of December 31, 2017, DAS had total assets of 536,105,428,622 won, or $468,233,831.00,[2] with liabilities totaling 263,561,904,752 won, or $234,570,095.00.  Thus, DAS has net assets of $233,663,736.  Given the amount of the Judgment, and DAS's ability to earn far more than the nominal interest rates that judgments in the federal court receive, any daily fine must be substantial to effectively coerce DAS to comply with the order.  Optional submits that $5,000.00 per day is the minimum fine sufficient to coerce its compliance.

With respect to a compensatory fine, that must be based on DAS's actual losses sustained as a result of the contumacy. United States v. United Mine Workers of America, supra, 330 U.S. at p. 304; Shuffler v. Heritage Bank, supra, 720 F. 2d at p. 1148.  Optional requests that the court allow Optional ten days to submits its actual costs in bringing this matter to the court's attention.

**5.  Conclusion**

For all the reasons set forth in Optional's application and in this Reply, Optional requests the Court enforce its judgment by finding DAS in contempt. Optional also requests that, to coerce DAS's compliance, that it be fined $5,000

---

[2] Optional is using the conversion rate as of 12/14/18 which was .00089 won = 1 dollar.

1  per day until it does so.  Optional lastly request it be awarded its fees and costs.

2                                                     Respectfully submitted,

3                                                     ROGARI LAW FIRM, PC

4  Date: December 17, 2018

5                                                       /S/  *RalphRogari*
                                                     By Ralph Rogari and Mary Lee
6                                                    Attorneys for Optional Capital, Inc.

## SUPPLEMENTAL DECLARATION OF RALPH ROGARI

I, Ralph Rogari, declare:

1. I am an attorney duly licensed to practice before all courts in the State of California, the U.S. District Court, and the U.S. Court of Appeals for the Ninth Circuit. Together with attorney Mary Lee, I have represented Optional in these consolidated proceedings, a related civil action *Optional Capital. Inc. v. Kyung Joon Kim, et al.,* case no. CV-04-3866-ABC, and multiple related superior court actions for the past 14 years. I am submitting this supplemental declaration in support of Optional's request that DAS be held in contempt. If called and sworn as a witness, I could and would competently testify to the facts stated in this declaration of my own personal knowledge.

2. Attached to this declaration as exhibit "3" is a true and correct copy of DAS Corporation's Audit Report on its Financial Statements for the period from January 1, 2017 through December 31, 2017, as well as for the period of January 1, 2016 through December 31, 2016. The document was obtained from DART (Data Analysis, Retrieval and Transfer System), which is an electronic disclosure system maintained by the Financial Supervisory Service (FSS), Korea's fully integrated supervisory authority. Listed and unlisted companies like DAS Corporation are required to file annual Audit Reports on their Financial Statements with the KSS through its DART system. The DART system is similar to the SEC's EDGAR system.

I declare, under penalty of perjury, under the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

This declaration was executed in Los Angeles, California.

Date: December 17, 2018

/S/*Ralph Rogari*
RALPH ROGARI