UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| Case No. | CV 04-02788-ABC (PLAx)<br>CV 04-03386-ABC (PLAx)<br>CV 05-03910-ABC (PLAx) | Date | December 28, 2018 |
|---|---|---|---|
| Title | *United States of America v. Real Property Located at 475 Martin Lane, Beverly Hills, California, et al.* | | |

Present: The Honorable   VIRGINIA A. PHILLIPS, CHIEF UNITED STATES DISTRICT JUDGE

| Beatrice Herrera | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):     Attorney(s) Present for Defendant(s):

None Present                                                 None Present

**Proceedings:   MINUTE ORDER DISCHARGING ORDER TO SHOW CAUSE (IN CHAMBERS)**

On July 23, 2018, Claimant Optional Capital, Inc. ("Optional") filed an "Application for Order to Show Cause" ("Application"). In the Application, Optional argued former claimant DAS Corporation ("DAS") wrongfully was in possession of funds (valued at over $12 million) that were the subject of the Court's in rem final Judgment entered on May 23, 2013. Following a bench trial, the Honorable Audrey B. Collins adjudicated and decreed that Optional was the owner of the contents of several bank accounts, including the funds at issue in the Application, identified as "all funds in Credit Suisse Private Banking Account No. 0251-844548-6 in the name of Alexandria Investments, LLC as of August 8, 2015" (hereinafter "Credit Suisse account"), as well as several pieces of real and personal property. The Judgment directed that the subject funds and properties were to be released to Optional and the Court retained jurisdiction to ensure compliance. In the Application, Optional claimed DAS had knowledge of the Judgment since it was entered in 2013 yet refused to release the funds to Optional. Optional asked the Court to issue an order to show cause why DAS should not be held in contempt for its failure to comply with the 2013 Judgment.

The Court granted the Application on August 21, 2018 and ordered DAS to show cause why it should not be held in contempt for failure to comply with the Court's May 23, 2013 final Judgment. DAS was ordered to respond in writing by no later than December 3, 2018 and the Court set the matter for a hearing on January 14, 2019 at 1:30 p.m. The Court ordered Optional to file a reply by no later than December 17, 2018.

DAS filed a timely response ("DAS Response") to the Court's Order to Show Cause ("OSC") on December 3, 2018 as well as a Request for Judicial Notice, attaching several exhibits.  Optional filed a timely Reply thereto on December 17, 2018 as well as objections to DAS's Request for Judicial Notice.

The Court has reviewed and considered all of the documents filed by Optional and DAS regarding this matter.  The Court concludes this matter is appropriate for resolution without oral argument pursuant to Local Rule 7-15.  The Court VACATES the hearing currently set on January 14, 2019 at 1:30 p.m.  For the following reasons, the Court concludes DAS has met its burden to show cause why it should not be held in contempt and Optional has failed to meet its burden to show that DAS violated the Court's May 23, 2013 final Judgment.

**I.    DAS's Request for Judicial Notice**

As stated supra, along with its Response to the OSC, DAS filed a Request for Judicial Notice ("RJN") with Exhibits A through QQ attached.  The documents of which DAS asks the Court to take judicial notice consist largely of documents filed in this case, as well as documents filed publicly in related cases before the Ninth Circuit and the California Superior Court, inter alia.  Optional objects to the Court taking judicial notice of most of the documents.

A court may take judicial notice of court filings and other matters of public record.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998)).

Although the Court has reviewed all of the documents submitted by DAS, the only documents it relies upon in issuing this Order are Exhibit G (the Court's May 23, 2013 Final Judgment on Claims of Optional Capital, Inc.), Exhibit X (the Court's June 17, 2011 Order on Optional's motions for contempt) and Exhibit BB (reporter's transcript from the May 2, 2011 status conference held in this case).  These documents were court filings in this case, which are matters of public record, so each is appropriate for judicial notice; the Court overrules Optional's objections to these Exhibits.  Id.

The Court denies the RJN with respect to the other Exhibits, as the Court did not rely on the remaining documents in reaching this decision; Optional's objections to Exhibits A-F, H-W, Y-AA, and CC-QQ are overruled as moot.

**II.   Legal Standard**

District courts have the inherent power to enforce their orders through civil contempt.  Spallone v. United States, 493 U.S. 265, 276 (1990); Cal. Dep't of Soc. Servs. v. Leavitt, 523 F.3d 1025, 1033 (9th Cir. 2008).  A party to the original action may invoke the Court's power by initiating a proceeding for civil contempt.  Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 444-45 (1911).  To establish liability, the party alleging contempt has the burden of showing by clear and convincing evidence that the alleged contemnor violated a specific and definite order of the Court by failing to "take all reasonable steps within the party's power to comply."  In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993).

Upon such a showing, the burden shifts to the alleged contemnor to demonstrate why they were unable to comply. <u>FTC v. Affordable Media, LLC</u>, 179 F.3d 1228, 1239 (9th Cir. 1999). District courts have wide latitude in determining whether there has been a contemptuous violation of its order and broad equitable power to order appropriate relief. <u>FTC v. EDebitPay, LLC</u>, 695 F.3d 938, 945 (9th Cir. 2012).

Appropriate sanctions may be imposed to coerce the contemnor into compliance with the Court's order, to compensate the complainant for losses sustained as a result of the contemptuous behavior, or both. <u>United States v. United Mine Workers</u>, 330 U.S. 258, 303-04 (1947); <u>United States v. Bright</u>, 596 F.3d 683, 696-97 (9th Cir. 2010).

**III.    Discussion**

Based on the record before it, the Court concludes Optional fails to demonstrate that DAS violated a specific and definite order of the Court and DAS has shown good cause that it should not be held in contempt.

As stated <u>supra</u>, Optional claims DAS has violated the Court's May 23, 2013 Final Judgment on Claims of Optional Capital, Inc. In the Judgment, the Court identified the Credit Suisse account as belonging to Optional and directed that "each of the above properties shall be released forthwith to Optional Capital, Inc., through its counsel of record, Ralph Rogari, and that all released currency shall include all accrued interest." To interpret this term in the Judgment, the Court evaluates it in context, which requires a brief recital of the history of the Credit Suisse account, drawn from the documents of which the Court has taken judicial notice, namely Exhibit X and Exhibit BB.

The Credit Suisse account belonged to the Kim Claimants and their company Alexandria Investment LLC, against whom the government instituted this forfeiture action. After the government filed this action in May 2005, the government moved to seize the assets of the Kim Claimants, including the Credit Suisse account. The government asked Switzerland to seize the account pursuant to the Mutual Legal Assistance Treaty ("MLAT"). The Swiss authorities granted the request and froze the account pending the outcome of this litigation and/or its own investigation. On April 17, 2007, DAS instituted criminal proceedings in Switzerland against the Kim Claimants, which resulted in a second freeze on the Credit Suisse account; DAS provided the parties to this action and the Court notice of its criminal proceedings against the Kim Claimants in Switzerland. The Court granted summary judgment to the Kim Claimants in 2007 and the Ninth Circuit affirmed that decision on October 3, 2008; as a result, the government's claims to the Credit Suisse account were extinguished and at some point thereafter the Swiss government removed the freeze on the Credit Suisse account pursuant to the MLAT.

On April 4, 2011, DAS withdrew its claims in this proceeding because it reached a settlement agreement with the Kim Claimants. DAS also dismissed the criminal proceedings in Switzerland and a separate litigation against the Kim Claimants pending before the California state courts. As a result of DAS dismissing the criminal proceedings in Switzerland, the Prosecutor's Office in Geneva lifted the only remaining freeze on the Credit Suisse account. The Prosecutor's Office then ordered the Credit Suisse bank to wire transfer 14 billion won from the Credit Suisse account to DAS's account. DAS received the wire transfer.

Optional previously moved for a contempt order against DAS on the basis that DAS settled its claims against the Kim Claimants and received the wire transfer from the Credit Suisse account. The Court was troubled by DAS's actions, but concluded in its June 17, 2011 Order that DAS did not violate an express Court order and contempt was not appropriate. In that Order, the Court explained DAS's actions had "bypassed the Court's in rem jurisdiction over the Credit Suisse accounts." (RJN, Ex. X at 9.) The Court explained its "actual control over those assets was predicated on the MLAT request being in place and on a courtesy that the Swiss authorities revoked with the forfeiture case was terminated." (Id.) The Court denied Optional's request to compel DAS to deposit the 14 billion won received from the Credit Suisse account into the Court's registry because DAS received the funds through a legal process in Switzerland and from the Swiss authorities, who had actual control over the account. (Id. at 12-14.) The Court acknowledged that the transfer of the Credit Suisse funds "diminish[ed] the value of the res," rendering any future decision by the Court on the competing claims in this case "a merely academic exercise." (Id. at 14.)

With this history in mind, and based on the plain reading of the Judgment, it is clear the Judgment did not require DAS to return any funds it received from the Credit Suisse account in 2011. The Court's final Judgment simply stated the Credit Suisse account belonged to Optional and should be turned over to Optional. Optional's proposed interpretation of the Judgment, arguing it required DAS to return the funds it received from the Credit Suisse account in 2011, requires a tortured reading. It also flies in the face of the requirement that to be held in contempt, a party must have disobeyed "a specific and definite court order." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d at 695. There is no specific or definite provision of the Court's final Judgment that required DAS to return the funds it received in 2011 from the Credit Suisse account.

Further, as explained by DAS, "[t]he transferred funds were no longer in the Credit Suisse account in 2013." (DAS Response at 16-17.) There is no evidence before the Court to suggest DAS had any control over the Credit Suisse account, yet failed to release the account to Optional after the Court entered its final Judgment in 2013.

Accordingly, the Court concludes Optional has not met its initial burden to show by clear and convincing evidence that DAS "disobeyed a specific and definite court order, and that such disobedience was (1) beyond substantial compliance, and (2) not based on a good faith and reasonable interpretation of the Court's order." DeMichiel v. AEG Live NJ, LLC, No. CV 16-00913-BRO (AGRx), 2017 WL 8114930, at *3 (C.D. Cal. Jan. 24, 2017). In addition, the Court concludes DAS has met its burden to show good cause why it should not be held in contempt.

Finally, the Court notes both DAS and Optional move for an award of costs and attorneys' fees for their efforts to respond to the OSC, for DAS, and for moving for contempt, for Optional. (See DAS Response at 23-25; Reply at 9-10). As stated herein, Optional is unsuccessful in its efforts to have DAS held in contempt, so it is not entitled to attorneys' fees as an additional sanction. Moreover, although DAS has prevailed in having the OSC discharged, it has not shown that Optional filed the Application "unreasonably and vexatiously." which would justify sanctions pursuant to 28 U.S.C. § 1927. The Court DENIES the request for fees and costs by both DAS and Optional.

**IV.     Conclusion**

For the foregoing reasons, the Court DISCHARGES the OSC issued on August 21, 2018, as DAS met its burden to show good cause why it should not be held in contempt and because Optional failed to meet its burden to show by clear and convincing evidence that DAS violated the Court's May 23, 2013 final Judgment.  The Court DENIES the requests for attorneys' fees and costs by DAS and Optional.

**IT IS SO ORDERED.**